FREDERICK R. SCHETTLER, Appellant,

*vs.*

DOMINIQUE BRUNETTE and AUGUSTINE BRU-
NETTE, Respondents.

APPEAL FROM BROWN CIRCUIT COURT.

The title or interest of a third person, not privy, or a party to the suit is not af-
fected by such suit or the judgment therein.

A conveyance alleged to be fraudulent and void as to creditors, cannot, in
general, be attacked, except by creditors or their representatives.

As to validity of conveyances by parent to child, and the rights of creditors and
purchasers :—herein.

The pleadings and proofs in this case, on the hearing of
which the plaintiff's bill was dismissed, are substantially as
follows :

"On the 10th day of June, A. D. 1856, the defendants,
Dominique and Augustin Brunette, executed and delivered to
the appellant a deed of a certain parcel of land, containing
about thirty acres, situate in said county of Brown, and being
a portion of private claim numbered ten on the west side of
Fox river.

" That said deed contained, on the part of said Augustin,
full covenants of warranty of seizure, against incumbrances
and for quiet enjoyment.

" That in consideration thereof, the appellant paid to said
defendants two thousand dollars, being part of the purchase
money, and gave his bond for the sum of three thousand dol-
lars more, to be paid in one year from that date, with interest,
and secured the same by mortgage on the premises purchased.

" The bill further alleges that said Augustin was not well

seized of the premises, and that the same were not *free* from incumbrances ; but on the contrary, that he had no other title to the same than what he derived through a deed from his father, the said Dominique—executed on the 2d day of March, 1849—which deed is set out in the bill, and which purports to convey to said Augustin, in consideration of one dollar, the whole of said private claim No. Ten, and a certain portion of private claim No. Eleven adjoining the same, upon trust, to maintain the said Dominique during his life time, and within two years after his decease to pay to nine different children of the said Dominique, the sum of twenty-five dollars each ; and to deliver to another son of the said Dominique one half of the stock that might be on the premises, and to pay him the sum of two hundred dollars, or to convey to that son one half of the lands mentioned in the deed.

That at the time said deed was executed, a suit was pending against said Dominique in the circuit court for Brown county, in favor of the executors of one John Lawe, deceased, to recover a sum of money due to the estate of said Lawe ; that said executors recovered judgment therein on the 2d day of October, 1849, for the sum of 433 83-100 dollars damages, and 11 99-100 dollars costs—that on the 2d day of June, A. D. 1854, said executors sued out execution upon said judgment, under which the sheriff of Brown county sold all the lands described in the deed from Dominique to Augustin to one H. E. Eastman—that on the 21st day of October, 1856, said lands remained unredeemed, and were then deeded by said sheriff to said Eastman ; that on the same day said Eastman gave written notice to the appellant that he should take legal steps to gain immediate possession of said premises; that the deed from Dominique to Augustin was fraudulent and void, as against the creditors of said Dominique—that said Eastman acquired his title by due process of law, under a judgment in favor of the creditors of said Dominique—that the debt to said

Eastman included all the lands to which either the said Dominique or said Augustin have any claim of title—and that said Augustin is wholly unable to respond to the plaintiff in damages for the breach of the covenants contained in his deed.

The bill further sets forth that the appellant, being anxious to protect himself against the claim of said Eastman under his deed, and the claim of said Augustin under his bond and mortgage, he effected an arrangement with said Eastman, which will save him from any considerable loss, except he should be obliged to pay said bond to said Augustin.

The bill prays for an answer—an injunction against transferring the bond—that the bond and mortgage may be cancelled—and for general relief.

On the 25th day of June, A. D. 1857, said defendants filed in said court their first answer, and therein admitted the conveyance from said defendants to the plaintiff, and the making of the several covenants alleged in behalf of said Augustin, and aver that at the time of making the same, the said Augustin was well seized of the premises, and that they were free from all incumbrances—that the plaintiff did not rely upon the covenants, but upon the searches made by himself and his attorney—admit the deed from Dominique to Augustin, and aver that it was made in good faith—that Dominique was old and unable to maintain himself, that from the time of making the deed Augustin had maintained him—that at the time of making the levy and sale to Eastman, the said Dominique occupied the premises as his homestead—admit that at the time of making the deed from Dominique to Augustin, a suit was pending against Dominique in favor of Lawe's executors—that a verdict was recovered therein, but deny that any valid or sufficient judgment was docketed therein—admit that an execution was issued upon said judgment, and a levy and sale were made, but deny that due notice of the sale was given by the sheriff—that the certificate of sale does not de-

scribe any part of private claims ten and eleven in the manner required by law.

The defendants further aver, that the execution and sale under it were illegal and void—that the execution was sued out by said Eastman as attorney, and that he never was employed as attorney—that he pretended to be the assignee of the judgment, which pretense was false—that the executors of Jno. Lawe were John F. Meade, James M. Boyd and George W. Lawe—that Meade died, and Boyd became the acting executor—that Eastman applied to Boyd for leave to issue the execution against Dominique Brunette—that said Boyd refused his consent, unless the said Eastman would procure in writing the release and consent of all the heirs of John Lawe, which Eastman promised to do, but had failed to do—that, relying upon this promise, the said Boyd delivered to said Eastman many of the papers belonging to the estate of said Lawe, which said Eastman promised to return if he did not procure such release and consent—that said Boyd subsequently gave Eastman a written notice to return said papers or procure said release and consent.

The answer denies that said Augustin procured his title in fraud of the creditors of the said Dominique, but avers that the same were obtained in good faith.

The answer further avers that the legal representatives of John Lawe frequently assured the said defendants that the real estate described in the bill should not be made answerable for said judgment—that the said Boyd told said Augustin to disregard said sale—that Eastman had no authority to act in the premises.

The answer further admits that the deed from Dominique to Augustin was made pending the suit of the executors of John Lawe, but that the contract was made between them before that suit was commenced, and the deed was drawn up in September, 1848, but the execution of it was delayed by

the sickness and death of the wife of the said Dominique.

And the answer avers that all matters stated in the bill are cognizable at law, and that the plaintiff is entitled to no equitable relief.

To this answer a general replication was filed on the 24th Sept., 1857, and on the 8th of December, 1857, the cause was referred, to take and report the testimony.

On the 4th of March, 1858, the commissioner filed in court the documents and depositions taken before him.

On the part of the plaintiff: 1st. Transcript of the judgment in favor of John F. Meade et. al., executors of John Lawe, vs. Dominique, entered Oct. 2, 1849. 2d. Transcript of the Docket entry of the same judgment. 3d. Certified copy of the sheriff's certificate of sale from the sheriff of Brown Co. to H. E. Eastman, for the front part of private claim No. 10, on the west side of Fox River, containing 192 13-100 acres ; also for 1-7th part of private claim No. 11, on the west side of Fox River, containing 30 11-100 acres. Certificate dated July 20th, 1854. 4th. The deposition of John P. Arndt, who testified that he had known Dominique Brunette, Sr., a little more than 33 years, and had known Augustin Brunette from his boyhood ; that they lived on the west side of Fox River, on private claim numbered 11 or 12, as he thought, but was not certain as to the number of the lot ; had not known Dominique to own any real estate except the lot he lived on for the last ten years ; "he told me he owned a wood lot just back of where he lived ; I think that he told me that he sold the wood lot within the last ten years ; am not positive that he did." Has known D. Brunette to own or claim some horses within the last ten years ; don't know that he owned any other personal property except perhaps some household property. 5th. Also the deposition of Dominique Brunette, Jr., who testified that he was the brother of Augustin Brunette ; that Augustin and his father lived together on

private claim No. 10, on the west side of Fox River; that Augustin had lived there from the time of his birth, and his father for 45 years; that the farm embraced a strip of private claim No. 11 adjoining No. 10. 6th. Also the deposition of H. Eugene Eastman, who testified under objection that he was surety on the administration bond for the executors of John Lawe. That John F. Meade, George W. Lawe and James M. Boyd, were executors; that only Mead and Boyd acted.

The witness also testified under objection that P. B. Grignon and wife, Alexander Grignon and wife, Andrew J. Vieau and wife, James M. Boyd and wife, and Harry F. Brown and wife, heirs of John Lawe, had assigned to him their interest in the estate, for which he had paid five hundred dollars in money, had assumed to pay all indebtedness outstanding against the estate, and had released some of the heirs from debts which they were owing to the estate; that he had paid and discharged debts of the estate to the amount of between 2,500 and 2,600 dollars; that he had assumed the defence of a suit now pending in the circuit court for Brown county, against the heirs of said Lawe, and that the former attorneys for the estate of John Lawe had turned over to him all the books, papers and effects, belonging to said estate, in pursuance of an order from James M. Boyd, the surviving acting executor.

On cross examination said Eastman testified that said assignment was in writing; was executed by the parties named above; that it conveyed all specialities, but he did not recollect that it mentioned lands; that he did not think it was acknowledged; that it was witnessed he thought, but did not remember by how many witnesses.

Also on the part of the defendants the deposition of James M. Boyd, who testified as follows: "Know the plaintiff's and defendants in this suit; knew John Lawe, deceased, late of Green Bay, Brown county, Wisconsin. The heirs of John

Lawe are Rachael Grignon, Rebecca Vieau, Maria M. Boyd, Mary F. Meade, Sarah Jane Grignon, Appolonia Brown and George W. Lawe, who was not mentioned in the will, having received his portion before the death of his father, John Lawe. John Lawe made a will; the executors of the will were George W. Lawe, John F. Meade, and myself; Maria M. Boyd above mentioned was my wife; Mary F. Meade above mentioned is the widow of John F. Meade; John F. Meade is dead; think that he died in May, A. D. 1850, am not positive; John F. Meade and myself were the acting executors under the will, as long as John F. Meade lived; George W. Lawe proved the will, cannot say that he acted any further; I became the acting executor of John Lawe's estate after the death of John F. Meade; I did not order a suit to be commenced against Dominique Brunette, as executor of John Lawe's estate; I forbid the suit until Mr. Eastman would comply with his agreement with me; I employed as executor of the estate of John Lawe, Timothy O. Howe, of Green Bay, as attorney of the estate, and directed him to commence the suit of John F. Meade, James M. Boyd and George W. Lawe, executors, vs. Dominique Brunette, in the circuit court of Brown county, March term, A D. 1849. The witness stated that the above suit was commenced on notes exhibited and indorsed by the commissioner with his name, and numbered 1-2-3-4-5-6 and 7 respectively, the said papers purporting to be filed in the office of the circuit court for the county of Brown, in the above entitled suit; I never employed H. Eugene Eastman as the attorney of John Lawe's estate in the above suit; I never sanctioned H. Eugene Eastman as attorney in that suit, or recognized him as such; the first I knew of an execution having been issued in the above suit to sell the real estate of Dominique Brunette, was seeing my name to the advertisement of the sale of the land of Dominique Brunette, in the Green Bay Advocate. I do not recol-

lect whether Eastman's name appeared in that advertisement as attorney ; Mr. Eastman called on me prior to my seeing the the advertisement, and applied for leave to issue the execution in the above suit, but I refused to allow him to do so. The time that Eastman came to me was in the summer of 1853 ; it was sometime after this that I saw the advertisement in the Green Bay Advocate; can't tell exactly how long; should think about nine or ten months. Between these two times I never gave Eastman any authority to issue the execution or take any other proceedings in that suit, as attorney of the estate ; I never assigned the judgment obtained in the above suit to Eugene Eastman, but turned over all the papers belonging to the estate of John Lawe to said Eastman, upon the condition that he was to settle the estate. He obtained the papers from me on the representation that Mrs. Meade had promised to sign a release to me as executor of the estate, and a consent that Eastman should be empowered to settle the estate ; Eastman said that the reason that he had not got the consent and release was, that Mrs. Meade was then absent; I am positive that Mrs. Meade was not absent at the time that Eastman made that representation. When I turned over the papers to Eastman he said that he would return them if he did not get a release and consent from Mrs. Meade; Mrs. Meade's release and consent was to be in writing ; Eastman never brought the release and consent of Mrs. Meade to me ; After I discovered that Eastman had not obtained the consent and release of Mrs. Meade, I wrote to him under date of the 10th day of October, A. D. 1853, stating in substance that he must either get the consent and release from Mrs. Meade or I should bring suit against him for obtaining the papers under false representations ; I think that I sent the letter to Eastman by my son ; some time after this I met Eastman, and he asked me what I meant by that note ? I replied that I meant exactly what I said ; I met Augustin Brunette shortly after I

saw the advertisement of the sale, and he asked me what I wanted to sell the farm for, the farm known by the name of the Moscur farm? I told Augustin to disregard the sale; that I never had authorized Eastman to issue that execution or sell that property." Also the deposition of Mary F. Meade, who testified as follows: "I am one of the heirs of the estate of John Lawe, deceased, late of Brown county and State of Wisconsin; know H. Eugene Eastman of the city of Green Bay; know Dominique Brunette and Augustin Brunette; I never executed a release to the executors of my father's estate, or assigned my interest in the said estate to H. Eugene Eastman; Eastman applied to me to sign a release to the executors of my father's estate, but I refused to do so, without taking the advice of my lawyer and my brother-in-law; Eastman said it made no difference whether I signed or not, as it would be just as well without. He also wrote me a note to come up to Mrs. Brown's and sign a release; I went to Mrs. Brown's as directed, and it was when there that he asked me to sign the release as above stated; Eastman has never asked me since to sign the release. This was about three or four years ago.

The following documents were filed and used in evidence on the hearing of the cause by stipulation, to wit:—On the part of the plaintiff—A certified copy of the Sheriff's deed to H. E. Eastman for the premises described in the certificate of sale, dated Oct. 20, 1856. Also, copy of power of attorney from Alex. Grignon and Sarah Jane Grignon his wife, to P. B. Grignon, dated, July 25th, 1853. Also, copy of assignment from P. B. Grignon and Rachel his wife, to H. E. Eastman, of the said Rachel's interest in the estate of John Lawe; date, July 20th, 1853. Also, copy of assignment executed by A. J. Vieau and Rebecca R. his wife, James M. Boyd and Maria M. his wife, Harry F. Brown and Appollonia E. Brown his wife, Alexander Grignon and Sarah J. his wife, by P. B.

Grignon their Attorney, of their respective interests in the estate of John Lawe.

And on the part of the defendants—A copy of the bond from F. R. Schettler to the defendant, Augustin Brunette The original deed from Dominique Brunette Sr. to Augustin Brunette. A certified copy of the *fi. fa.* in the suit of *Meade et al. Executors, vs. Dominique Brunette,* with a copy of the Sheriff's return endorsed thereon. At the March term of said court, the cause was heard upon pleadings and proofs, and upon the hearing thereof, the bill was dismissed with costs to the defendant, but without prejudice.

*T. O Howe,* for the Appellant.

The case shows—that the sale from D. Burnette to Augustin Burnette was made while the former was indebted to the estate of John Lawe; that it was made pending suit by the executors of John Lawe; that it was voluntary; that the debtor reserved from the fee a certain use to himself, and the remainder of the estate was a pure gift to his children; and such a gift, whether made by deed or by last will and testament, cannot be upheld against prior creditors.

Twyne's Case; 1 Smith's Leading Cases 1; 2 Black. Com., 297—marg. note; *Otty vs. Manning,* 9 East, 59; Roberts on Frauds, 13, 15, 60, 447; *Beale vs. Guernsy,* 8 J. R., 446; *Wickham vs. Miller,* 12 J. R., 320; *Hildreth vs. Sands,* 2 J. C. R., 35; *Slater vs. Dudley,* 18 Pick., 373; *Parkman vs. Welch,* 19 Pick., 231; *Jackson vs. Zimmerman,* 7 Wend., 436.

The testimony of Grignon shows a positive purpose to defraud Lawe's Estate, and a contrivance to effect that purpose, because he says the deed from Dominique to Augustin was actually drawn before the suit was commenced against the former; that it was left with a notary for Mrs. Brunette to sign, several months before the suit was commenced; that immediately after the suit was commenced the deed was exe-

cuted by the old man and delivered to Augustin, without the signature of the wife, and yet she did not die until the next April.

Defective title, and insolvency of the grantor, is good de-defence against suit for specific performance or to a bill to foreclose mortgage. 1 Hill on Mortgages, 565, 577 ; Adams' Eq., marg. p. 179, note 1 ; Parsons' Sel, Cases in Equity, 27. But the case shows an entire breach of the covenant of seizin ; and upon the breach of that covenant, the covenantee may recover all moneys paid, and of course may have all promises to pay money cancelled. 2 Hill. on Real Prop., 403.

The omission of the Sheriff to give notice of sale is not proved—and if proved, would not affect the title of the pur-chaser. Rev. Stat. p. 544, § 79.

*John C. Nevelle*, for the Respondent.

*By the Court*, Smith J. We do not see how this bill, in its present form and under the present statement, prayer and proofs in the case, can be sustained. The complainant says, in his bill, that being anxious to protect himself against the claim of. Eastman under his deed, and the claim of said Augustine under his bond and mortgage, he effected an arrangement with the said Eastman, which will save him from any considerable loss, unless he should be compelled to pay said bond to said Augustine. In other words, the com-plainant and Eastman have entered into a contract between themselves, Augustine not being a party thereto, by which a kind of partition of the estate shall be effected between the contracting parties, and the court is called upon to enforce this arrangement by a decree analagous to that of specific performance against a person who was not a party to the contract.

Whatever may be the rights and equities of the complainant, it is evident that they must depend in a greater or less degree upon the title of Eastman. But that title is disputed, and its validity is difficult to be determined in this suit. Indeed, we do not see how it can be so determined; at least upon the pleadings and proof in the case.

If it had been distinctly alleged in the bill, and had appeared in proof that Augustine was insolvent, we might perhaps enjoin the bringing and prosecution of an action on the bond and mortgage, until Eastman's title should be tried and determined; provided such a decree could be justified by the allegations and prayer of the bill. But such is not the object or the prayer of the bill. The gist of the bill is, that inasmuch as Eastman has obtained a title by sheriff's deed, which would interfere with the title obtained by the plaintiff by virtue of the deed of the defendants to him, as he views the legal effect of such sheriff's deed, he has entered into an arrangement between Eastman and himself, by which he can compromise the matter. But Eastman is not a party to this suit, and we cannot, therefore, pass upon the validity of his title. No decree in this suit would bind him, and Augustine cannot be required to litigate that title here.

There is no sufficient proof of Augustine's insolvency, that we have been able to discover, nor is it admitted by the pleadings.

The prayer of the bill is, that the bond and mortgage held by Augustine, may be given up to be cancelled, and for general relief. If Eastman's title was undisputed, and an eviction had been had thereon, and the defendant was insolvent, this would be a proper degree and kind of relief. Perhaps in case of insolvency of the defendant it might be had without eviction. But we do not think the plaintiff is entitled to have the bond and mortgage cancelled under the case here made by the pleadings and proofs. Unless the plaintiff is entitled to

have his bond and mortgage delivered up and cancelled, in consequence of Eastman's deed alone, no agreement between him and Eastman, to which Augustine is not a party, can make the obligation on the part of the latter to deliver up the bond an 1 mortgage, the stronger. How can this arrangement between Eastman and the plaintiff in any manner affect the defendant?

The deed of Dominique to Augustine was executed before the judgment was rendered in favor of Lawe's Executor against Dominique. There was no lien upon the premises. The legal title passed to Augustine free from incumbrance. But it is claimed by the plaintiff that that conveyance was fraudulent as against the creditors of Dominique; that Lawe was a creditor, that the executor of the estate of Lawe obtained judgment, which was assigned to Eastman, who, deeming said conveyance fraudulent, levied upon and sold the premises as the property of Dominique; that Eastman purchased the property at such sale, and that he has made a favorable arrangement with Eastman to quiet all these matters without loss to him, and the bill calls upon the court to ratify such arrangement, or rather to blot out of existence Dominique's deed to Augustine, to declare the same fraudulent as against a creditor without a trial, and without any party before the court claiming in capacity of creditor, and wipe out the plaintiff's bond and mortgage to Augustine, and to carry into effect the agreement between Eastman and the plaintiff, provided after all, Eastman is willing to sanction the decree of the court.

Unless the deed of Dominique to Augustine was fraudulent, Eastman has not a shadow of title, and it is enough to say, that in view of the evidence in this case, we are far, very far from being prepared to declare that deed fraudulent as to the estate of John Lawe. That is the only creditor, apparent, and we find the executor of this estate remonstrating against the

prosecution of this claim, against the issuing of execution, and yet it is claimed that this deed was fraudulent, as made to hinder and delay a creditor who was entirely willing to be hindered and delayed; indeed who was entirely conversant with all the facts and circumstances as they transpired, and not only made no objection to any of them, but refused to disturb them.

But it is said that the case shows an intentional breach of the covenant of seizin. How so? This can only be on the hypothesis that Dominique's deed to Augustine was void. Was it void? Not unless it was frudulent as to John Lawe, or his estate, and then only at the instance of the creditor. We have already commented upon that question. Whatever might be the rights of Mr. Eastman claiming, as the representative of Lawe, for Lawe's estate, this plaintiff has failed to establish a case entitling him to recover.

The decree of the circuit court, dismissing the bill, is affirmed with costs.