First National Bank of Stevens Point vs. Knowles.

FIRST NATIONAL BANK OF STEVENS POINT, Appellant, vs. KNOWLES, Garnishee, etc., Respondent.

KELLOGG NATIONAL BANK OF GREEN BAY, Appellant, vs. SAME, Respondent.

*April 16 — December 14, 1886.*

| 67 | 373 |
|----|-----|
| 66 | 238 |
| 67 | 407 |
| 67 | 373 |
| 74 | 398 |
| 67 | 373 |
| 84 | 610 |
| 67 | 373 |
| 87 | 371 |
| 67 | 373 |
| d89 | 286 |
| 67 | 373 |
| 95 | 507 |

*Fraudulent conveyance: Private corporation: Trust deed to secure bonds: Chattel mortgage: Garnishment.*

1. By a deed dated December 1, 1883, and delivered March 15, 1884, an insolvent manufacturing corporation conveyed all of its property, real and personal, to a trustee to secure the payment of $100,000 of bonds dated December 1, 1883, which the deed stated were issued "to provide an increase of working capital called for by an increasing business." Interest on the bonds was payable on the first days of April and October in each year, and by the terms of the deed, upon a failure to pay any instalment of interest for sixty days, the whole sum became due and it was made the duty of the trustee to proceed to enforce the deed, and he was authorized on the commencement of such proceedings to take possession of the property and carry on the business of the corporation. The resolution authorizing the issue of the bonds provided that a previous issue to the amount of $50,000 (secured by a previous trust deed), should be replaced by the new bonds, but this was not stated in the new trust deed. The old bonds were replaced by new ones, and of the remaining $50,000 of the new issue nearly all were delivered to existing creditors, including directors of the company, as security for or in payment of their claims. But few of such bonds were delivered before April, 1884, and some were not delivered until in July. Default was made in the payment of the interest due April 1, 1884, and in July, 1884, a small part of such interest still remaining unpaid, the trustee, pursuant to the deed and at the request of the officers and directors, took possession of the property and has continued ever since to carry on the business of the company, by and through its officers, in the same manner and with the same employees as the company had previously carried it on. In garnishment proceedings by creditors against such trustee, upon evidence showing the above facts and others, it is *held* that the trust deed was executed with intent to hinder, delay, and defraud the unsecured creditors of the company, and is void for that reason and because it disposes of the entire assets of the insolvent company

for the benefit of a few of its creditors to the exclusion of all others.

2. A trust deed given by a private corporation covering its personal property, should be filed as a chattel mortgage, and is void as to after-acquired property.

3. The validity of a trust deed as against creditors of the grantor may be tested in proceedings by garnishment against the trustee.

APPEAL from the Circuit Court for *Fond du Lac* County. The facts are stated in the opinion.

For the appellants there were briefs by *Sutherland & Sutherland*, attorneys, and by *Charles W. Felker*, of counsel, and the cause was argued orally by *Mr. G. E. Sutherland* and *Mr. Felker*. They argued, among other things: 1. A domestic manufacturing company could not give a trust deed. The enumeration of that right in sec. 1828, R. S., and its omission in sec. 1748 raise the presumption that such omission was intentional. As to the distinction between a trust deed and a mortgage, see *Marvin v. Titsworth*, 10 Wis. 326. 2. This deed is void because it covers after-acquired property, and because it leaves the trustee in possession to change, transform, and use the property at pleasure. *Comstock v. Scales*, 7 Wis. 159; *Hunter v. Bosworth*, 43 id. 583; *Lanyon v. Woodward*, 55 id. 652; *Place v. Langworthy*, 13 id. 629; *Steinart v. Deuster*, 23 id. 136; *Blakeslee v. Rossman*, 43 id. 116. 3. It is void because this insolvent corporation executed an instrument securing to its officers a preference, and a reservation of great value to itself. *Haywood v. Lincoln Lumber Co.* 64 Wis. 639; R. S. sec. 2306; *Barney v. Griffin*, 2 N. Y. 365; *Goodrich v. Downs*, 6 Hill, 438, 440; Perry on Trusts, sec. 588. 4. It is invalid because it is a mortgage upon personal property and never was filed as such. *Smith v. Waggoner*, 50 Wis. 155. 5. It is void because its manifest intent and necessary effect was to hinder, delay, and defraud creditors. *State v. Mueller*, 10 Mo. App. 87; *Blennerhassett v. Sherman*, 105 U. S. 100; Bump on

Fraud. Conv. 25–50, 245; Wait on Fraud. Conv. secs. 10, 327; *Barney v. Griffin*, 2 N. Y. 365; 17 id. 9; *Goodrich v. Downs*, 6 Hill, 438; Angell & A. on Corp. (9th ed.), sec. 191; *Coleman v. Burr*, 93 N. Y. 31; *Robinson v. Elliott*, 22 Wall. 523; *Owen v. Arvis*, 26 N. J. Law, 38; Jones on Chat. Mortg. sec. 352; Herman on Chat. Mortg. 96; *David v. Birchard*, 53 Wis. 492; *Smith v. Conkwright*, 28 Minn. 23. 6. It is void, so far as the personal property is concerned, because it is in effect an assignment for the benefit of creditors. *Norton v. Kearney*, 10 Wis. 448; *Page v. Smith*, 24 id. 368; *Truitt v. Caldwell*, 3 Minn. 364; *Murphy v. Caldwell*, 50 Ala. 461. 7. If some of the bonds were valid and the trustee was entitled to hold the property for their liquidation, the court should have determined the amount of such valid bonds and charged the garnishee with the balance of the estate in his hands for the benefit of the plaintiffs. R. S. secs. 2766, 2768, 2769; *N. E. M. Ins. Co. v. Chandler*, 16 Mass. 275; *Wheeler v. Bowen*, 20 Pick. 563. That a trustee of an express trust may be summoned in garnishment, see *McDonald v. Moore*, 34 Tex. 384; *Douglas v. Simpson*, 121 Mass. 281; *Everett v. Walcott*, 15 Pick. 94; *Lynch v. Crary*, 34 N. Y. Super. Ct. 461; *Norton v. Norton*, 43 Ohio St. 509; *Webb v. Peele*, 7 Pick. 247; *Becker v. Dunham*, 27 Minn. 34.

*Edw. S. Bragg*, of counsel, for the respondent, contended, *inter alia*, that the instrument under which the garnishee holds is not a general assignment for the benefit of creditors. Burrill on Assignm. sec. 7; *Curtis v. Leavitt*, 15 N. Y. 143, 206–7; *Briggs v. Davis*, 21 id. 574; *Ridgway v. Stewart*, 4 Watts & S. 383–391; *M. & M. Bank v. Bank of Pa.* 7 id. 335. It is not a trust deed proper. Burrill on Assignm. sec. 8; Perry on Trusts, 602 *et seq.; Wilson v. Russell*, 13 Md. 495; *Hoffman v. Mackall*, 5 Ohio St. 124; 1 Hilliard on Mortg. 359. The garnishee's title is under a *trust in the nature of a mortgage*. Such an instrument is

upheld in *Carpenter v. B. H. G. M. Co.* 65 N. Y. 43; *Davison v. W. G. L. Co.* 99 id. 558; *Lord v. Yonkers F. G. Co.* id. 547; *Pierce v. Emery,* 32 N. II. 484. And see *Farmers' L. & T. Co. v. Comm. Bank,* 11 Wis. 207; *S. C.* 15 id. 424; *Pierce v. M. & St. P. R. Co.* 24 id. 551. It is not a mere chattel mortgage so far as it pertains to personal property, and the rule that such a mortgage is invalid as to after-acquired property or property not *in esse* is not applicable. See Wood's Field on Corp. 630–632, and the cases last above cited. Even in the case of chattel mortgages proper that rule does not apply when there has been an actual delivery unless fraud intervenes. *Moody v. Wright,* 13 Met. 31; *Chynoweth v. Tenney,* 10 Wis. 397; *Oliver v. Town,* 28 id. 328; *Blakeslee v. Rossman,* 43 id. 116; *Langton v. Horton,* 1 Hare, 549; *Hendricks v. Robinson,* 2 Johns. Ch. 283. That garnishment is not the proper remedy in this case, see Drake on Attach. sec. 457; *Mass. Nat. Bank v. Bullock,* 120 Mass. 86.

The following opinion was filed May 15, 1886:

ORTON, J. These two cases were submitted together on the same facts. Suit was brought by the plaintiffs severally against the McDonald Manufacturing Company and others, on claims for borrowed money of over $10,000 each, which occurred before the recording of the trust deed hereafter mentioned, and the garnishee summons was served on the 10th day of July, 1884. Judgments were rendered in the suits, in the first, August 2, and in the other, December 27, 1884. The garnishee answered on the 30th day of July, 1884, generally, that he had no money in his hands belonging to the defendants, and that he held the property of said company by virtue of a trust deed to him as trustee, dated December 1, 1883, acknowledged January 14, 1884, and recorded and delivered March 15, 1884. Issue was taken upon said answer, and a trial had on evidence in August, 1885.

The main facts in evidence were as follows: The company was incorporated under the general law and commenced business in 1877, in the manufacture of farming machinery and implements. The principal machine manufactured was a threshing-machine, horse-power, and separator. In 1879 the company needed money, and executed a trust deed upon its property, or some part of it, to said *George P. Knowles*, the present trustee and garnishee, to secure the issue of $50,000 in bonds at eight per cent., which bonds were sold in market. The first threshing-machine made became unpopular by reason of some defect, and many of them were returned. Sales of machinery were made in several of the western states, through agents, on paper of one, two, and three years, and a very large amount of such paper was unpaid. The company changed their machine, and were proceeding to manufacture the new machine, and had many of them completed, and became again embarrassed for want of money, and on the 1st day of December, 1883, was unquestionably insolvent. It had real estate valued at about $37,000, and patterns valued at about $13,000, and many of the old machines on hand, and a large amount of farmers' notes, most of which had been pledged as collaterals, and they had some new machines, made and incomplete; and, from the first trial balance in evidence of July 9, 1884, the debit and credit were balanced at $412,257.95. The evidence showed conclusively that the property and resources of the company were nominally overrated nearly one half in value, and the company had no money when the trust deed was made, December 1, 1883, and none went into the hands of the trustee. Aside from the $100,000 of stock and $100,000 of trustee bonds, as near as I can ascertain from the very confused testimony, the company were indebted over $200,000, and one half of it, at least, above its resources to pay. Very much of its indebtedness had been postponed and renewed from time to

time, and its collaterals were nearly exhausted, and the debts were nearly or quite all past due, and their business was continued solely on borrowed money. On the 16th day of November, 1883, there was a meeting of the stockholders, and a resolution was passed that the board of directors be authorized " *to issue and sell or hypothecate for the use of this corporation in its business, to provide an increase of working capital called for by an increasing business,*" 100 bonds for $1,000 each, dated December 1, 1883, payable the 1st day of October, 1893, with interest at seven per cent., payable semi-annually, on the first days of April and October in each year ensuing the date thereof, upon coupon warrants issued with such bonds, to be signed by the president, under the corporate seal, etc. The president of the company was authorized, at the same time, to make, execute, acknowledge, and deliver a trust deed for the corporation, in the nature of a mortgage on its property, to *George P. Knowles,* trustee for the bondholders, to secure said bonds and interest. The trust deed was to have the following conditions: That a failure to pay any instalment of interest for sixty days after the same is due, shall make the whole principal sum due and collectible as well as the maturing interest, and thereupon, upon request of a majority in amount of the bondholders, it is made the duty of the trustee to proceed and procure with all convenient speed a decree for the sale of the property conveyed, in some court of competent equity jurisdiction; and it is further declared to be a part of the contract upon which said bonds *are sold and put upon the market* that in case of default, " and equitable proceedings are taken to enforce the trust deed, the said trustee may, upon the commencement of such proceedings, enter into the possession of the trust property, *hold and use the same, carry on the business of this corporation,* as the receiver thereof or otherwise, as in his best judgment the best interests of the bondholders may require."

The trustee may collect all choses in action, and apply proceeds in carrying on the business, etc., pay the expenses, and hold the balance for the bondholders. Upon sale of the property being made in such equitable proceedings, after payment of costs, fees, etc., the proceeds are to be applied to the payment of principal and interest of the bonds, and, if not sufficient to pay the same in full, to be distributed, share and share alike, without preference. The trust deed was so made of all the property, real and personal, rights, credits, and effects, of the company.

It will be seen that the sole purpose, stated in the deed, of the issue of these bonds, was to sell or hypothecate them to raise money " to provide an increase of working capital called for by an increasing business." " It is declared to be a part of the contract upon which said bonds *are sold and put upon the market*," etc. On the face of the deed and that part of the resolution copied into it, there is no other purpose apparent or expressed than to raise means to be used in carrying on the business, by selling the bonds for cash in the market. This would appear to be a fair and legitimate transaction of a *solvent* manufacturing corporation, beneficial to itself and its creditors. But a part of the resolution was not copied into the deed, viz.: " That the present issue of bonds, of the amount of $50,000, be called in or paid up, and that the $100,000 above provided for shall be issued in their place." This, of course, has reference to the issue of $50,000 of bonds in 1879, and discloses quite a different purpose for at least half of the $100,000 of bonds than that appearing in the trust deed, and it appears that this part of the resolution was carried out by passing over $50,000 of the bonds to take up that amount issued in 1879 and outstanding to the holders thereof. This trust deed is attacked for being fraudulent and void as to the plaintiffs and other creditors of the corporation, and that was the real issue on the answer of the garnishee.

We have seen that the corporation was badly insolvent at the time it was made, and the character and terms of the deed. We may now inquire what it was possible for the corporation and trustee to do under it, and what they probably would do, and what they actually did under it, with a view of ascertaining what was the intent with which it was made, and its legal effect.

When the remaining bonds were disposed of by the company does not very clearly appear. There is no evidence that any of the bonds except one was ever sold for cash or part cash. They were delivered to divers creditors as security or in payment of their claims, and some of them, over $10,000 in amount, were delivered to officers of the corporation as collateral security for money that had been advanced previously by them for the company, and $14,000 in amount of the bonds were delivered by order of the directors to divers creditors on the 9th day of July, the day when the trustee took possession of the property under the trust deed. On the 10th day of July, 1884, the day the garnishee summons was served, the directors had a meeting and passed a resolution ratifying and confirming the delivery of bonds Nos. 58 to 100 inclusive, to various parties and as collateral security to creditors, and on the same day the stockholders held a meeting and made the same ratification thereof. It is quite probable that few, if any, of the $50,000 of the bonds remaining after taking up the old $50,000 of bonds, were negotiated or delivered to any one before the 1st day of April, 1884, the time when the first semi-annual interest became due, for default in the payment of which the trustee took possession of the property.

It appears from the trial balance that all that instalment of interest had been paid on all the bonds except the sum of $604.85, before July 9, 1884. In November, 1884, the trustee made out written requests for him to take such measures as he deemed best in managing the property in

his possession under the deed, and sent them to the bond-holders, and many of them — probably a majority — signed and returned them; and on the 9th day of July the officers and directors of the company requested him to do so, and turned the property over to him. There were then about 200 machines on hand, completed and unfinished, and the company had no means with which to continue the business. The garnishee summons was served the next day. Since that time, until the trial, the trustee has been in full possession of everything the company owned, and continued to carry on the business, borrow money, make sales, collect the debts, and do everything that the company had been doing, and by the same book-keeper, and by and through the same persons who had been and were the officers of the corporation, and the same employees. The trustee personally had scarcely anything to do with the concern, except, perhaps, to assist in negotiating loans and become security therefor as trustee, for he was a lawyer and not a manufacturer. There was scarcely any perceptible change in the manner of the business at home or abroad. There was no inventory made when the trustee took possession, and never, until in January, 1885, was there any made. On the same day the trustee took possession he commenced a suit by the service of a summons against the corporation to foreclose the trust deed, and October 1, 1884, filed his complaint.

The object and purpose of the suit appear in the prayer for relief, which is that he, the trustee, may be decreed to be in rightful possession of the property, and that he may continue to have the exclusive possession and management of the same, and pay off the bonds, and manage the property in such manner as he may see fit for the best interest of the bondholders; that he may sell, assign, or dispose of the same to the best advantage of the trust, procure insurance, loan money, and pledge the property, and pay all

such sums borrowed or expended in care of the property out of first moneys coming to his hands; and that the property be sold by the trustee whenever he deems best, and out of the proceeds pay the bonds, and that he may indorse all notes, and assign all contracts or other property, in performance of the trust, and for other relief. This suit, for aught that appears in the record, is still pending, and at the same stage of the proceedings. On the 15th day of November, 1884, many of the bondholders sent to the trustee a written request, as aforesaid, that he take such measures as he may deem best in the matter of holding and managing the trust property in his hands, and that, if he deemed it for their interest, he proceed to run the shops in his possession, and proceed to the manufacture of threshing-machines, horse-powers, and extras for next season's business, to a moderate amount, etc. The trustee doubtless complied with this request; and, if he obtains a decree according to his prayer in the complaint, he will continue to run the shops and manufacture threshing-machines for any length of time to come, limited only by his own wish, will, and discretion.

Was it not the intention and the design of the giving of the trust deed that the trustee should so continue to conduct the business, so long as it was deemed best by the directors and officers of the corporation, and has not the result so far answered fully their expectation? Why did the corporation prescribe such terms of default upon failure to pay the first semi-annual interest of April 1, 1884, when it was not probable, if possible, that such interest would or could be paid? Was it not probable that at-least $50,000 of the bonds could or would not be sold in market for cash by that time, less than one month after the trust deed took effect by delivery to the trustee? The default occurred and was taken advantage of before many, if not most, of that portion of the bonds were even distributed among favored

creditors. Why was it necessary that this new trust deed should be made for the benefit of the holders of the $50,000 of bonds of 1879 when they were already secured, except as a pretext for the making of this trust deed as a cover of the property against other creditors? Did not the managers of the corporation know that in its condition of utter insolvency they could not sell its bonds in market for cash, except at a ruinous discount? And yet their sale in market for cash is the only disposition of them contemplated by the terms of the deed. Why did the directors and officers abdicate, and so willingly surrender up all the property and business of the corporation to the trustee and to his management, so soon after making the trust deed, when they could have as well continued the business nominally as a corporation as they could do really in the name of a trustee? For it seems that the same persons have continued in the real management of the business, but not as officers of the corporation. What other possible rational object could the directors and stockholders have had in issuing these bonds, and making the trust deed, except to hinder, delay, postpone, and defeat and defraud those of their creditors not provided for thereby? Did they design and intend, when they issued the bonds, to deliver one half of them to the holders of the old bonds of 1879? If so, why was not this purpose expressed in the resolution embodied in the trust deed, instead of their sale or hypothecation "to provide an increase of working capital called for by increasing business?" The real design seems to have been quite different from that expressed in the deed. The garnishee received, during his management of the business, from sales, collections, and otherwise, a large sum of money, probably between forty and a hundred thousand dollars or more, and paid it out, when, how, and for what is not fully disclosed. At the time of the trial he had no money on hand, but he claims that by his management the amount and value of

the assets had been enhanced many thousands of dollars. The interest on the bonds had all been paid, including that of April, 1885, before the trial, and very little, if any, interest due April 1, 1884, remained unpaid when the trustee took possession. Then what was the necessity of his taking possession and continuing in possession to the exclusion of the company? It might be answered that the trustee was never in the actual possession to the exclusion of the company, but the directors and officers continued in such possession, and really carried on the business as before, not nominally as officers, but as the same persons, under the pretext that the trustee was in possession and carrying on the business as a shield against creditors. If the trust deed was given in good faith, there was no necessity for giving it, and it was of no benefit or advantage, but utterly ruinous to the corporation and an injury to most of the creditors. It seemed to be very difficult to get these remaining $50,000 of bonds out and placed in the hands of certain creditors, for most of them were in the hands of the directors not long before the 9th day of July, when the trustee took possession, and $14,000 of them were placed in the hands of a special agent on that day, with direction to distribute them among certain creditors, and they were probably not all so distributed until after the trustee had taken possession.

If the directors and officers of the company and the trustees are presumed to have intended the consequences of their own acts and conduct, commencing from the time the trust deed was delivered and continuing down to the trial of this case, then such acts and conduct were consistent with no other design or intention than to hinder, delay, and defraud their creditors in giving the trust deed, and such intent was most conclusively proven and beyond any reasonable doubt. That the creditors were so hindered, delayed, and defrauded by such acts and conduct there can be

no question. Many other facts and circumstances bearing upon the same question might be mentioned if consistent with the reasonable limits of this opinion. This question of intent to hinder, delay, and defraud creditors is one of fact for the jury. But the jury having been waived, this important issue devolves upon the court. To pass upon it is an unpleasant duty, but duty of the court nevertheless; and this court regrets the necessity of reversing the finding of the learned circuit court on this issue, but we feel forced by the evidence to do so. The evidence was not at all clear as to dates, amounts, or particulars, and very much confused. The trustee knew scarcely anything about the particulars, as the business seems to have been left under the charge and control of the same persons as before, and the secretary and book-keeper of the company were the only persons who seemed to have any knowledge of the transactions since the trustee claims to have taken possession. When the bonds were delivered to the various creditors could not be known by any entry on the books or memorandum, and the various amounts and values had to be approximated; but we think we have stated the above facts by the warrant of the testimony, not intending to give them a weight and bearing they do not reasonably have.

We cannot resist the conclusion that the whole scheme was devised and carried out with the purpose and intent to hold off, hinder, delay, and defraud the creditors representing the great bulk of the company's indebtedness, while continuing the business, and that scheme is unusually transparent. The studied formality and apparent fairness and legitimate character of the trust deed on its face, by which the bonds of the corporation were to be placed upon the market to raise funds with which to continue the business or enlarge it, cannot rescue the transaction from the surrounding circumstances and subsequent conduct of the parties, so clearly indicating its fraudulent intent.

It was plausibly claimed by the learned counsel of the respondent that such a manufacturing corporation to make farming machinery, to be sold broadcast over several states and necessarily on long credit, should have more indulgence in delaying creditors, and that they must be postponed from time to time from the exigencies of its business, and that no such corporation can be saved from insolvency if crowded and pushed by its creditors like a common debtor.   It may be answered that all these peculiarities and exigencies of its business might have been anticipated at the start, and unless the means were adequate for its business, and to pay its debts when· due, its stockholders and proprietors should not have embarked in such an enterprise.   This is emphatically a *private* corporation to carry on a strictly private business, and its charter can afford it no immunity that is not common to a partnership or private person engaged in the same business, so far as its creditors are concerned.   But if it is a *quasi* public corporation, it can be guilty of a fraud on creditors, and with the same consequences.   Ang. & A. Corp. § 387.

The issue of bonds and mortgaging the property and franchises of railroad companies and other *quasi* public corporations to secure them, are regulated by statute, and such private business corporations do not come within the law or the reason of such regulations.   The personal property and franchises of such private corporations are not treated as real estate or fixtures; and property not *in esse*, or to be acquired in future, does not pass by mortgage or trust deed to secure indebtedness any more than that of a private or natural person or partnership.   This trust deed, therefore, so far as it conveys as such security the personal property of the corporation, should have been filed as a chattel mortgage, and as to future-acquired property it was void.   *Comstock v. Scales*, 7 Wis. 159.

.The holding that this trust deed is void, as having been

made with intent to hinder, delay, and defraud creditors, is in strict analogy with reported cases of similar *indicia* of fraud, and is supported by the general principles of the law. Allowing the trustee to continue the business in the old way and to buy and sell and change the property and retain the possession and continue the business indefinitely, makes the deed fraudulent as to creditors. Jones, Chat. Mortg. 355; *State v. Mueller*, 10 Mo. App. 87; Herm. Chat. Mortg. 96. The corporation, in making this trust deed, must be deemed to have intended the natural and inevitable consequence of the act done, and that was to hinder, delay, and defraud creditors. *Coleman v. Burr*, 93 N. Y. 17; Bump, Fraud. Conv. 22, 272, 278; *Cunningham v. Freeborn*, 11 Wend. 241; *Ford v. Williams*, 24 N. Y. 359. Especially must this be so when such consequence has been directly caused and induced by the action of the parties under the deed. *Owen v. Arvis*, 26 N. J. Law, 38. In this last case, the sale of all the property was held void because the consideration was a mortgage running twenty-one years, and the grantor afterwards assigned the mortgage to preferred creditors in payment of their debts. See, also, *Ranlett v. Blodgett*, 17 N. H. 299; *Robinson v. Elliott*, 22 Wall. 513; *Smith v. Conkwright*, 28 Minn. 23; Wait, Fraud. Conv. §§ 10, 327; *Goodrich v. Downs*, 6 Hill, 438; *Blennerhassett v. Sherman*, 105 U. S. 100. The recent case of *Bergen v. Porpoise Fishing Co.* 41 N. J. Eq. 238, is in point. The many cases in this court need not be cited.

But it is needless to cite authorities in a case like this, where the inference of the fraudulent intent must be drawn from the facts, if at all. The question of such intent is one of fact for the jury, and we do not think that a jury would require the authority of reported cases to find from the facts of this case that the trust deed was made with the intent to hinder, delay, and defraud the creditors not provided for by it. Holding, as we do, that the trust deed was made

with such intent and is for that reason void, considering the fact that the corporation was *insolvent* when it was made, it follows that the deed is void also because it had the effect of a preference of creditors, in the disposition of the entire property and assets of the corporation for the benefit of only a small part of the creditors to the exclusion of all others. When the deed was made, the corporation being grossly insolvent, its directors and officers in equity held the entire assets and resources of the corporation in trust, not for the stockholders, but for its creditors; and equity requires that they should be exclusively devoted to the payment of all its creditors alike and *pro rata*. In such a case equity is equality, and sanctions no preferences, and is no respecter of persons. This has been so recently decided by this court, on a review of the authorities, that it is unnecessary to cite any other case than *Haywood v. Lincoln Lumber Co.* 64 Wis. 639. Here, also, was a preference of creditors, and among them some of the officers of the corporation, as in that case. For these reasons we must hold that this trust deed is absolutely void as to the plaintiffs and other creditors contesting the same; and that the property conveyed by it is the property of the corporation and liable to be taken on execution on said judgments as if no such trust deed or mortgage had been made; and that any money in the hands of the garnishee, derived from the sale of any of said property so conveyed, or obtained by him in the course of his management of said business, or collected from the credits of said corporation, be paid to be applied on said judgments.

It is claimed that there are certain equities in favor of the holders of the $50,000 of the bonds secured by said trust deed and taken in lieu of the $50,000 of bonds issued in 1879 by said corporation, and of the trustee for moneys borrowed by him or secured by his indorsement or guaranty, and which went into the business or property of the corporation during

First National Bank of Stevens Point vs. Knowles.

his management of the concern, that ought to be considered and saved by this court while passing upon the validity of the trust deed. But we do not feel called upon or think it proper to decide anything in respect to such equities on this appeal, as they have not as yet been set up or considered in the circuit court or in any way adjudicated in that court. Such bondholders and the trustee must be left to proceed in the circuit court, in respect thereto, as they may be advised.

The able and learned counsel of the respondent contends that, " in a court of legal jurisdiction, garnishment is a legal proceeding, and consequently the defendant's right to the fund garnished must be a legal one. If the debt or liability sought to be charged by garnishment must be determined in an equitable proceeding before its existence and quantity or value can be ascertained, like the garnishment of an individual partner's interest in an unsettled partnership account, then in such case the proceeding by garnishment is not the proper remedy." By sec. 2766, ch. 125, R. S., on " Garnishment," " the court shall render such judgment in all cases as shall be just to all parties;" "adjudge the conveyance, transfer, or delivery to the sheriff, etc., of any real estate or personal property disclosed, or by judgment pass the title thereto."

This language would seem to confer a wide equitable jurisdiction in a case of garnishment. But in sec. 2768 the jurisdiction in just such a case as this is conferred as follows: " Any property, moneys, credits, and effects held by a *conveyance or title void as to the creditors* of the defendant, shall be embraced in such liability " to the plaintiff, to the amount of the property, moneys, credits, and effects in his possession or under his control, belonging to the defendant, as defined in the preceding part of the section. This places the question beyond all doubt. But it appears to be the general rule in garnishment that the garnishee may be ex-

amined as to the validity of the title by which he claims to hold the property; and, if fraudulent as to creditors, he may be ordered to deliver it to the officer as subject to the execution or attachment. Drake, Attachm. § 458; *Lamb v. Stone*, 11 Pick. 527. Such fraudulent transfer is made an exception to the rule stated by the learned counsel. It is not necessary, in such a proceeding, that the fraudulent conveyance should be formally set aside or annulled by the judgment of the court, and it is questionable whether it should be, as the conveyance is only held void as to creditors, and only such as attack it. When so void, it is no defense of the garnishee as against the plaintiff, and he is ordered to deliver the property notwithstanding the conveyance. In an action at law, when a deed is set up by either party, it may be attacked for fraud or mistake by the opposite party. *McMahon v. McGraw*, 26 Wis. 614; *Cleveland v. Burnham*, 64 Wis. 345. This practice has long obtained in the circuit courts and in this court without question. *Bates v. Simmons*, 62 Wis. 69; following a long line of similar cases.

The findings of the circuit court are consistent only with the finding that the trust deed was valid, and, in our view of the case, such findings are erroneous.

*By the Court.*— The judgments of the circuit court are reversed, and the causes remanded with direction to find the trust deed void as to the plaintiffs and other creditors attacking the same, in accordance with this opinion, and for further proceedings according to law.

Upon a motion for a rehearing there was a brief for the respondent by *E. S. Bragg* and *Joshua Stark.* They urged, *inter alia*, that the case did not require that the trust deed in question be held void *in toto*, and that a judgment setting it aside absolutely would be erroneous and unjust. Even if the purpose of the corporation was to hinder, delay, and

defraud creditors, that intent was not sufficient to invalidate the deed. The fraudulent intent must have been known to and entertained by both the parties to the deed. *Sterling v. Ripley,* 3 Pin. 155, 164; *Mehlhop v. Pettibone,* 54 Wis. 652, 657. There is no evidence that the trustee or those who had held the previous issue of bonds secured by the trust deed of 1879 participated in or had knowledge of any intent to defraud. Even if the trustee knew that the deed of December 1, 1883, was given with fraudulent intent, his knowledge could not affect the bondholders for whose benefit the deed was made and who were the real grantees or mortgagees of the corporation. The bonds and deed of 1879 were of undoubted validity, and the new bonds and deed so far as they were substituted for the earlier ones must also be held valid. *Jones v. Parker,* 51 Wis. 218; *Williams v. Starr,* 5 id. 534; *Morrow v. Reed,* 30 id. 81; *James v. M. & M. R. Co.* 6 Wall. 752. The rights and equities of the holders of the old securities may now be claimed under the new. They were set up by the garnishee and were passed upon by the circuit court, which held that all of the new securities were valid. This court should not, therefore, ignore those rights and equities. It has been advised by the unquestioned proofs that there are holders of bonds to the amount of at least $50,000, who are innocent of any fraud and are justly entitled to a lien upon all the mortgageable property of the corporation either under the trust deed of December 1, 1883, or under that of 1879. The cause should, at least, be remanded with directions that the rights of those bondholders be considered and passed upon by the circuit court before the entry of final judgment. Under the direction now given all of the property, without reservation, is subjected to execution or attachment as if no lien existed. Especially should not the circuit court be directed to find the trust deed void as to creditors other than the plaintiffs. *Schettler v. Brunette,* 7 Wis. 197; *Adams v.*

*Filer*, id. 306; *Saveland v. Green*, 36 id. 612; *Sanger v. Mellon*, 51 id. 560; *Graham v. M. & M. R. Co.* 3 Wall. 713.

For the appellants it was argued, in reply, that the garnishee having rested his claim of title on the deed of December 1, 1883, must abide by the issue thus made; and the deed of 1879 is therefore not involved in this action. The deed of 1883 was fraudulent upon its face, and all persons claiming under it necessarily took with full notice. Wait on Fraud. Conv. secs. 9, 10, 376.

The motion was denied December 14, 1886.