Edwards vs. Roepke and another.

EDWARDS, Appellant, vs. ROEPKE and another, Garnishees, etc., Respondents.

*September 28 — October 15, 1889.*

Garnishment: What property subject thereto.

74 571
77 114

74 571
86 28
86 309

74 571
89 98

74 571
94 68
95 190

74 571
101 135

74 571
102 311

74 571
107 290
108 184

74 571
f112 1 26

1. A garnishee is not liable as such for property in his possession unless the right of the principal defendant thereto is absolute at the time of the service of the garnishee process; nor for the amount of a debt, if its becoming due depends upon a contingency.

2. A contract by which the principal defendant was to build a boiler for the garnishees provided that the first payment thereon should be made when the iron arrived, a second payment two weeks after work was begun, and the balance when the boiler was completed acceptably to a designated inspector. It also provided that the garnishees should deliver to said defendant the old boiler then in their mills, *provided*, however, that they might, at any time before the completion of the new boiler, sell the old one, paying to said defendant a certain sum therefor. The garnishee process was served before the new boiler was completed and while the old one remained as a fixture in the mills of the garnishees. *Held*, that the title to the old boiler had not passed to the defendant, and that neither it nor the amount to become due on the completion of the new boiler was subject to the garnishment.

APPEAL from the Circuit Court for *Manitowoc* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears in the record that December 11, 1884, the defendant Cumberlidge entered into a contract in writing with the garnishees, Diedrick Roepke & Bros., as partners, to the effect that Cumberlidge was to build and furnish to and for said Diedrick Roepke & Bros. one steam-boiler and all fixtures described, to be completed without delay; and in consideration therefor Diedrick Roepke & Bros. therein agreed to pay to Cumberlidge the sum of $1,000 in terms and rates as follows: $500 at the time of the arrival of the iron in Manitowoc, $200 two weeks after the work on the

boiler should be commenced, the balance after and as soon as the work had been completed. Diedrick Roepke & Bros. also agreed to furnish and deliver free at Manitowoc City the boiler then in their mills in the town of Manitowoc Rapids, together with all the fixtures then attached and belonging to said boiler, and also to transport the new boiler from Manitowoc to their mills, *provided*, however, that said Diedrick Roepke & Bros. might at any time before the completion of the new boiler sell the old one, paying to Cumberlidge therefor the sum of $225; and it was therein further agreed and mutually understood that the work on said boiler should be done in good workmanlike order of the first class, and that the material and workmanship should be subject to the inspection of a person therein named, and subject to his rejection.

July 13, 1885, this action was commenced against the principal defendant, Cumberlidge, and also against Diedrick Roepke & Bros., as garnishees. August 3, 1885, the garnishees answered, denying all liability as such garnishees. The defendant Cumberlidge defaulted August 3, 1885. The plaintiff served notice on the garnishees and on the attorney for Cumberlidge that he elected to take issue on the answer of the garnishees, and that the plaintiff would maintain that said garnishees were liable as such in this action.

In January, 1886, the cause was referred to a referee to hear, try, and determine. After the trial before said referee, and on January 8, 1889, the referee filed his report in writing, to the effect that he found, as matters of fact: (1) That December 11, 1884, Cumberlidge and Diedrick Roepke & Bros. made the contract mentioned; (2) that December 11, 1884, Diedrick Roepke & Bros. sold to Cumberlidge one old boiler, which was then in possession of the Roepkes, for the agreed sum of $225, which sum was a fair valuation thereof, and which sum it was then worth; (3) that Cumberlidge, soon after the execution of said contract, com-

menced work upon the boiler, and had, at the date of the service on the garnishees, been at work on the same for at least four months; (4) that the payments of $500 and $200, respectively, were to be made on the new boiler as stated in the contract, and that the old boiler should apply as a payment of $225 at the time of the execution of the contract; (5) that prior to the time when the garnishee papers were served, to wit, July 13, 1885, Diedrick Roepke & Bros. had paid to Cumberlidge on said contract various sums, amounting in the aggregate to $691.50, besides the old boiler, amounting to $225, leaving a balance due upon said contract, according to the terms thereof, at the time of said service of said garnishee papers, of $8.50, and that said old boiler, the property of Cumberlidge, was in the hands of the garnishees at the time of the service of said garnishee papers; (6) that after the service of the garnishee papers there was necessarily paid by Diedrick Roepke & Bros., for the completion of the new boiler, pursuant to the contract, the sum of $248.50, and that the same should be allowed the garnishees as having been necessarily expended, in order to secure the completion of said boiler; (7) that the amount to become due on said contract upon the completion of said boiler was the further sum of $308.50; (8) that the contract was fully executed and completed, and the new boiler therein mentioned accepted as completed by the garnishees, in November, 1885; (9) that January 25, 1888, judgment was rendered and docketed against Cumberlidge and in favor of the plaintiff for $281.62, and has never been paid nor satisfied, nor any part thereof; (10) that the old boiler was in the hands of Diedrick Roepke & Bros. until November, 1885, when it was by them turned out to Cumberlidge, or upon his order, and has never since been in the possession of, or under the control of, the garnishees; (11) that Diedrick Roepke & Bros. were liable as garnishees in the full sum of the judgment against Cumberlidge, with interest at seven

per cent. per annum from January 25, 1888; and that the garnishees, having denied all liability, were liable to the plaintiff herein for his costs and disbursements in this garnishee action. And as conclusions of law the referee found that judgment for $300.23 and costs should be entered in favor of the plaintiff and against the garnishees.

June 11, 1889, the trial court, on proper motions and application, modified said findings of fact and conclusions of law of the referee in the following particulars, to wit: The court found: (1) That the old boiler belonging to the garnishees was to be delivered to Cumberlidge in part payment for the new boiler; and from the terms of the contract, and from the evidence proper to be considered, it appeared, and therefore the court found, that the real intention of the parties was that the title to the old boiler should not vest in Cumberlidge until the contract had been fully performed on his part. (2) That at the time the garnishee summons was served there was actually due Cumberlidge on the contract the sum of $8.50, for which amount, and for that only, the plaintiff was entitled to judgment; and that, as the garnishees in their answer denied all liability, they must pay the costs of this garnishee action. And as conclusions of law the court found and held that the plaintiff should recover of the garnishees $8.50 damages, and his costs and disbursements in this action, to be taxed. The findings of the referee which were inconsistent with such findings of the court were overruled, and the exceptions to the findings of the referee, filed by the defendants, sustained, so far as a charge for the old boiler is concerned, and so far as a charge for $51.50, not necessarily paid by the garnishees to Cumberlidge, after the service of the garnishee papers herein, for the completion of the boiler; and the other exceptions were overruled.

The court thereupon ordered judgment in favor of the plaintiff and against the garnishees for $8.50, and costs to

be taxed.   From the judgment entered thereon accordingly the plaintiff appeals.

*G. G. Sedgwick*, for the appellant.

*J. S. Anderson*, attorney, and *G. A. Forrest*, of counsel, for the respondents.

CASSODAY, J.   The statute made the garnishees liable to the plaintiff to the amount of the property, moneys, credits, and effects in their possession or under their control belonging to Cumberlidge, or in which he was then interested, to the extent of his right or interest therein, and of all debts due or to become due to him, except such as might be by law exempt from execution.   Sec. 2768, R. S.   The corresponding section of the statute applicable to garnishment in justice's court contains substantially the same language. Sec. 3719, R. S.   Under this last section it has been held by this court that "a specified salary per month, to be paid to an employee at the end of each month, is not liable to process of garnishment served *before* the end of the month in which it is to be earned.   It is neither then 'due,' nor is it within the meaning of the section . . . 'to become due,' because its becoming due depends upon a contingency." *Foster v. Singer*, 69 Wis. 392.   It is there, in effect, said that the liability or non-liability of the garnishee becomes fixed at the time of the service of the garnishee process, and depends upon whether *at the time* of such service the principal defendant's right to such property, money, credit, effects, or debt has become *fixed* and *absolute* as against such garnishee; that "debts . . . to become due" to such principal defendant, relate only to such as the garnishee owes *absolutely* at the time of such service though payable subsequently.   Such is the logical result of other decisions of this court.   *Goode v. Barr*, 64 Wis. 659; *Drake v. Harrison*, 69 Wis. 99; *Ingram v. Osborn*, 70 Wis. 192.   It is manifestly the true construction of the section of the stat-

ute here involved.    It only remains to apply such construc-
tion to the case at bar.

It appears from the evidence and the terms of the con-
tract that only $700 had become due thereon from the gar-
nishees to Cumberlidge at the time of the service of the
garnishee process.    Prior to that time, as found by the
referee, the garnishees had paid Cumberlidge on the con-
tract in numerous items of cash and flour amounting in the
aggregate to $691.50, leaving only $8.50 due and unpaid
thereon at the time of such service.    By the terms of the
contract nothing more became due thereon until the new
boiler and work thereon were fully completed in good work-
manlike order of the first class, with material and work-
manship which should be acceptable to the inspector therein
named.    That, as found by the referee, did not occur until
in November, 1885, some four months after the service of
the garnishee process.    At the time of such service there
was no certainty as to whether it would ever occur or not.
The right to such balance, therefore, had not, at the time
of such service, become fixed and absolute as against the
garnishees or in favor of Cumberlidge, and hence was not
subject to garnishment.

But it is claimed, and the referee found, that the title to
the old boiler  mentioned in the contract became vested in
Cumberlidge at the time of the execution of that contract,—
December 11, 1884,— as a payment thereon of $225, the
agreed valuation thereof.    There are several good reasons
why this contention was properly rejected by the trial court.
At that time there was nothing due on the contract.    By
the terms of the contract nothing was to become due thereon
until the arrival of the iron for the new boiler in Manito-
woc — which might never occur.    The first payment was
for a different amount, and was paid in cash, which indi-
cates the construction which the parties themselves put upon
the contract to be entirely different.    The contract de-

scribes the old boiler as then being in the mills of the garnishees at Manitowoc Rapids, and which they therein agreed "to furnish and deliver free at Manitowoc City, . . . together with all the fixtures" then "attached and belonging to said boiler . . . *provided*, however," that said garnishees might "*at any time before the completion of the new boiler sell the old one*, paying to the" said Cumberlidge therefor the sum of $225. It appears from the evidence that the old boiler, together with all the fixtures thereof, remained *as fixtures* in the mills of the garnishees until at or about the time of the completion of the new boiler. During the time of such reserved right of sale it is very evident that the title to the old boiler did not vest in Cumberlidge, but remained in the garnishees, especially so long as it continued to remain a fixture in their mills. The fact that the contract provided that in case the garnishees sold the old boiler before the completion of the new, then they should pay Cumberlidge therefor the sum of $225, necessarily implies that, if they should not so sell before such completion, then it and such fixtures should apply as a *payment* of that amount at the time of such completion. The construction given to the contract by the trial court is manifestly the only true construction.

*By the Court.*— The judgment of the circuit court is affirmed.