DAHLMAN, Respondent, vs. GREENWOOD, Assignee, imp., Appellant.

*January 17 — April 12, 1898.*

*Voluntary assignment: Garnishment.*

1. A debtor gave a chattel mortgage of nearly all his property to several creditors, with an oral understanding that one of them should take the property into possession and convert it into money for the benefit of all. *Held,* that such chattel mortgage was in effect a voluntary assignment for the benefit of creditors, and, not being executed in the manner provided by law, is void as to the other creditors.

2. Property transferred under a conveyance which is void as to creditors is subject to garnishment under sec. 2768, R. S. 1878, even though the property should be seized under attachment or execution. Sec. 2753, R. S. 1878, should be construed as referring to property which is not in the hands of persons claiming title or ownership thereof. *Holton v. Burton,* 78 Wis. 321, distinguished.

3. The rights acquired by a garnishment of one holding property under a conveyance void as to creditors are not affected by a voluntary assignment made eight days afterward.

4. Where one creditor has garnished the holder of property of the debtor under a conveyance void as to creditors, and also two insurance companies against whom the debtor had claims, the other creditors whose garnishments did not affect the latter claims might properly be subrogated to the rights of the first creditor in case he was paid out of the other property.

APPEAL from a judgment of the circuit court for Jefferson county: JOHN R. BENNETT, Circuit Judge.  *Affirmed.*

This is an action of garnishment.   On the 15th of October, 1896, William Schneider and George Schneider were copartners in the mercantile business at Lake Mills, Wisconsin. Upon that day George Schneider executed a chattel mortgage, in the name of the firm, upon the stock in trade and book accounts of the firm, to four creditors of the firm; the understanding being that Greenwood's State Bank, one of said creditors, should take possession of the property, converting the same into money for the benefit of all the mortgagees.   The firm had no other property, except claims against two insurance companies for $500 each, resulting from a fire which had occurred some time before.   The bank immediately took possession of the mortgaged property and the books of the firm.   Schneider Bros. were insolvent when the mortgage was given.   Upon the following day the plaintiff, who was a creditor of the firm in an amount of over $500, commenced action upon his claim against Schneider Bros., and garnished the mortgagees, and also garnished the insurance companies above referred to.   Other garnishment suits followed on behalf of other creditors, but the insurance companies were not again garnished.

On the 23d of October the firm executed a voluntary assignment, under the statute, to the defendant *Greenwood*, who duly qualified; and upon the following day, upon petition of the assignee, and upon notice to the mortgagees and garnishing creditors, the circuit court ordered the mortgagees to turn over to the assignee the property in their possession under the mortgage, without prejudice to the rights and interests of any of the parties, and that the assignee convert the same into money, and hold the same subject to any rights of the several parties which might thereafter be established in the garnishment suits.   The assignee subsequently realized from the sale of the merchandise, clear,

Dahlman vs. Greenwood.

$2,250, and had collected from the book accounts $400 at the time of the trial of this action. Subsequently, *Greenwood*, as assignee, was interpleaded as a defendant in the garnishee actions, and the action was tried by the court upon stipulated facts and certain additional testimony; a motion on the part of the principal defendants to dismiss the garnishment action as an abuse of process being heard and decided at the same time.

The court held, in substance, that the chattel mortgage was in effect a voluntary assignment, and void as to the plaintiff, and that it was void as to all other creditors by reason of the subsequent assignment of Schneider Bros., and that the assignee, *Greenwood*, stood liable to the plaintiff, in lieu of the garnishees, to the extent of all the merchandise, book accounts, and claims against insurance companies, which had come into his possession as assignee. The judgment also directed that *Greenwood* pay to the plaintiff, out of any funds in his hands derived from the insurance claims, or, if such funds were insufficient, then out of such funds in his hands derived from the merchandise and accounts, the sum of $556.01 and interest; being the amount of the plaintiff's judgment against Schneider Bros., as well as the costs in the garnishment action. The judgment further provided for the marshaling of the firm assets in the hands of the assignee, and for the payment of subsequent garnishing creditors as their rights should appear in the several garnishment actions. The judgment also provided that said subsequent garnishing creditors be subrogated to the plaintiff's rights against the insurance companies in case the plaintiff's judgment should be paid out of the mortgaged merchandise and accounts; also, that the assignee proceed to collect the accounts and insurance claims, and hold the proceeds subject to further equitable distribution in the other garnishment actions.

From this judgment the assignee appeals.

*R. M. Bashford*, for the appellant, contended, *inter alia*, that the garnishment proceeding was an abuse of process because the property was subject to attachment or execution. *German Am. Bank v. Butler-Mueller Co.* 87 Wis. 467; *Steen v. Norton*, 45 id. 412; *Wickham v. South Shore L. Co.* 89 id. 23; *Chanute v. Martin*, 25 Ill. 63; *Corbin v. Goddard*, 94 Ind. 419; *Norton v. Kearney*, 10 Wis. 443; *Page v. Smith*, 24 id. 368; *Fuller & F. Co. v. McHenry*, 83 id. 573; *Northern Nat. Bank v. Weed*, 86 id. 212; *McCown v. Russell*, 84 id. 122. The rights of the garnishing creditors were dissolved by the voluntary assignment. *Holton v. Burton*, 78 Wis. 321; *Sexton v. Mann*, 15 id. 162; *Wolf v. McKinley*, 65 Minn. 156; *Ives v. Addison*, 39 Kan. 172; *White v. Coleman*, 130 Mass. 316; 8 Am. & Eng. Ency. of Law, 1179.

For the respondent there was a brief by *Rietbrock & Halsey* and *Stark & Hansen*, and oral argument by *L. W. Halsey*.

The following opinion was filed February 8, 1898:

WINSLOW, J. Schneider Bros. gave a chattel mortgage upon their stock of goods and book accounts to several cred-itors, with the oral understanding that one of such creditors (i. e. Greenwood's Bank) should take possession of the property, and convert it into money for the benefit of all the mortgagees. The mortgage covered all the firm property save two claims of $500 each against certain insurance companies, and the bank immediately took possession of the mortgaged property. This transaction unquestionably constituted a voluntary assignment for the benefit of creditors, which, not being executed in the manner provided by the statute, was void as to the other creditors of the firm. *Winner v. Hoyt*, 66 Wis. 227. The fact that the mortgage did not cover all of the property of the firm does not affect the legal consequence. *Maxwell v. Simonton*, 81 Wis. 635; *Jameson v. Maxcy*, 91 Wis. 563. The plaintiff was a creditor of Schneider Bros. at the time the mortgage was given, and

Dahlman vs. Greenwood.

garnished the bank while the stock of goods was still in its possession under the mortgage, and upon the same day garnished both the insurance companies. A few days later, Schneider Bros. made a voluntary assignment, under the statute, of all of their property, to the defendant *Greenwood*, who duly qualified and assumed the duties of his trust, and took possession of the mortgaged property under an order of court, and proceeded to convert the same into money; such action, however, being without prejudice to the rights of the mortgagees and garnishing creditors. The right of the plaintiff to claim any advantage over other creditors by reason of his garnishment is challenged upon two principal grounds, and these grounds will be considered.

1. It is said that, if the mortgage was fraudulent as to creditors, then the mortgaged property was liable to seizure upon writ of attachment or execution, and, hence, that it was an abuse of process to commence garnishment proceedings, because there was property, liable to execution, sufficient to satisfy the plaintiff's demand. R. S. 1878, sec. 2753. It is true that garnishment process will be set aside if it is shown that the defendant had property, liable to execution, sufficient to satisfy the plaintiff's demand. *German American Bank v. Butler-Mueller Co.* 87 Wis. 467. But it is also true that the statute (R. S. 1878, sec. 2768) provides that any property held by the garnishee under a conveyance void as to the defendant's creditors shall be embraced in the garnishee's liability. Under this provision it has been the custom to attack such transfers as the one before us by garnishment proceedings, as numerous cases in this court will show, and we are not aware that the right to do so has been questioned until now. While it is undoubtedly true that the mortgaged property might be seized by the officer under a writ of attachment or execution, and the question of *bona fides* afterwards tested in a replevin action, it also seems undeniable that the legislature, by enacting the provision last

cited, in sec. 2768, clearly intended to allow the question to be tested in garnishment proceedings. Such certainly has been the understanding of the bar and of the courts, and much may be said in favor of this method. It is far more orderly, less arbitrary, and involves no violence, nor the use of a strong hand. The two provisions must be construed together and harmonized, if possible. This may be readily done by construing that part of sec. 2753, R. S. 1878, which provides that the affidavit of garnishment must state that the defendant has not property liable to execution sufficient to satisfy the plaintiff's demand, to mean property which is not in the possession of third persons claiming title or ownership thereof. This, we think, is a reasonable construction, and harmonizes the two sections, and disposes of this contention.

2. It is claimed that the garnishment proceedings created no lien upon the mortgaged property, and, hence, that the subsequent voluntary assignment of Schneider Bros. conveyed the property to the assignee. The statute provides (ch. 349, Laws of 1883, as amended by ch. 451, Laws of 1887) that a voluntary assignment shall, under certain specified circumstances, avoid a large class of sales, mortgages, and other transfers of property made within sixty days prior to the assignment, but it does not provide that garnishments shall be thereby defeated. The argument is, however, that unless there was a specific lien, created by the garnishment, on the property, then it passed by the assignment, and, by operation of law, defeated the garnishment. In this connection it is argued that the proceeding by garnishment is analogous to proceedings supplementary to execution, and reliance is placed upon the decision in the case of *Holton v. Burton*, 78 Wis. 321. In the last-named case, supplementary proceedings were commenced against Burton before a court commissioner, and an injunction granted, which did not, however, enjoin him from making a voluntary assignment.

Burton thereupon made a voluntary assignment of his property under the statute. After the assignment the court commissioner appointed a receiver in the supplementary proceedings, and upon application the circuit court vacated the order appointing a receiver. Upon appeal this court affirmed this order, holding that, under the law and rules of court then in force, the making of a voluntary assignment after the commencement of supplementary proceedings, but prior to the appointment of a receiver and to the acquiring of any specific lien upon the property, was intended to supersede, and in fact did supersede, the supplementary proceedings.

Admitting the analogies which exist between supplementary proceedings and garnishment, it is not difficult to see the very obvious differences between the *Burton Case* and the one now before us. In that case no property had been found in the hands of any one who was before the court. The proceedings had been commenced, and the defendant had been enjoined from disposing of property, which injunction, however, did not, under the law and rule of court, prevent him from making an effective voluntary assignment, under the statute, of all his property. Not only had no property been reached, but no party had been reached who had any property of the defendant in his hands. In the present case, however, prior to the assignment a party had been served with garnishment process, who had in his hands more than $2,000 worth of property, under a conveyance void as to the plaintiff. The moment that process was served, the law had stepped in, and declared that from that time the garnishee should "stand liable to the plaintiff" to the amount of such property, unless exempt, or at least to an amount sufficient to satisfy the judgment obtained by the plaintiff in the main action. While that right or liability may not amount to a lien on the specific property held by the garnishee, the law nowhere expressly or impliedly provides that it shall be divested by a subsequent garnish-

ment process. The garnishee becomes a trustee of the prop-
erty for the benefit of the plaintiff, and is so denominated
in some jurisdictions, and the plaintiff acquires a specific
right to have it held to satisfy his claim. Rood, Garnish-
ment, §§ 193, 194. Our conclusion is that the rights ac-
quired by the garnishment were not affected by the subse-
quent assignment.

It is contended that the garnishment process did not reach
or affect the book accounts which had been covered by the
terms of the chattel mortgage. The question is one of some
difficulty, and upon which the authorities are in some con-
fusion. Rood, Garnishment, § 167, and authorities cited. We
find it unnecessary, however, to decide the point in this case,
as the merchandise in the hands of the garnishee amounted
to far more than the plaintiff's entire judgment, and as to
this property there is no question of the plaintiff's right.
The question of the liability of the garnishee for the pro-
ceeds of the book accounts cannot affect the plaintiff.

We perceive no error in the judgment upon the question
of marshaling of assets and subrogation. The plaintiff had
garnished both the chattel mortgagees and the insurance
companies. The subsequent garnishments were only directed
against the chattel mortgagees, and not against the insur-
ance companies. The plaintiff therefore had acquired the
right to depend upon two separate funds, while the other
creditors had only the right to look to one of the funds. We
see no objection to the application of the equitable rule that
where one creditor can resort to two funds which are the
property of the same person, and other creditors can resort
to one of the funds only, the former must first seek satisfac-
tion out of the fund which the latter cannot touch. *C. Gotz-
ian & Co. v. Shakman*, 89 Wis. 52. This result is practically
accomplished by the judgment in the present case.

If ultimately the claims against the insurance companies
are collected (which seems to be a matter of some doubt), the

money will pass into the hands of the assignee, and the subsequently garnishing creditors will be subrogated to the right of the plaintiff against such moneys. Thus, practically, the plaintiff will have been paid out of the fund to which he alone had the right to resort, and the other creditors will receive the full benefit of the fund in which all had an interest. On the other hand, if nothing is collected of the insurance companies, then the question drops out of the case, because there were not in fact two funds, and the plaintiff's prior right to satisfaction out of the mortgaged goods is unquestioned.

No other questions require attention.

*By the Court.*— Judgment affirmed.

BARDEEN, J., took no part.

A motion for a rehearing was denied April 12, 1898.