Grant County Service Bureau, Inc., Appellant, v. Treweek, Respondent.

*March 7—April 2, 1963.*

For the appellant there was a brief by *Knudson, Morrow & Pope* of Dodgeville, and oral argument by *J. Paul Morrow.*

For the respondent there was a brief and oral argument by *James P. Fiedler* of Mineral Point.

HALLOWS, J. This case raises the interesting question of whether a person may prepay his funeral and have such arrangement immune from attack by his creditors. Plaintiff contends the trial court erred in denying its motion for judgment on the pleadings. The argument is grounded on the theory the prepaid funeral arrangement for the benefit of Kendall created a trust revocable by Kendall as alleged in the answer and therefore constituted a void transfer under sec. 241.01, Stats., 28 W.S.A., p. 79. We pass over the question which is not raised whether, if this arrangement is void under that section, it may be so adjudicated and the property reached by the garnishment process. See *First Nat. Bank v. Knowles* (1886), 67 Wis. 373, 28 N. W. 225, and *Dahlman v. Greenwood* (1898), 99 Wis. 163, 74 N. W. 215,

reaching such result under an earlier garnishment statute expressly creating a garnishee's liability under a void conveyance. As far as material in this case, sec. 241.01 provides all transfers or assignments of things in action made in trust for the use of the person making the transfer are void against existing or subsequent creditors of such person. It might be argued the use of a trust res contemplated by this section means use by the grantor during his lifetime and whatever benefit one might receive from being buried in the manner in which he desired and prepaid is not such a use. It is plain sec. 241.01 expresses a public policy that a debtor·must pay his creditors and cannot use the trust device to enjoy his worldly possessions at their expense.

The trial court made no mention of sec. 156.125, Stats., 21 W.S.A., p. 175, which was first enacted by ch. 291, Laws of 1953. This section as amended in 1955 (ch. 80, secs. (1) and (2), Laws of 1955) provides any payments made under a prearranged funeral plan shall be and remain trust funds including the interest thereon until the death of the person whose funeral is so provided for or the funds are sooner released upon the demand of the person making the payments after written notice to the funeral director. Provision is also made for the deposit of funds in the bank or trust company or invested in a savings and loan association to be held in a separate account in the name of the person making the payments under the contract. Regardless of the somewhat misleading and confusing language of the statute, it is apparent the intent of the legislature was to secure the performance of the funeral services and burial contracted for by creating a trust of the payments made. Funeral directors before performing the contract might go out of business, die, or be unable to perform the contract for other reasons. The enactment of the legislature recognizes the validity of prearranged and prepaid funerals and the public interest in securing the performance of such arrangements.

Assuming a prepaid funeral arrangement by an insolvent debtor for his own burial is the type of transaction contemplated by sec. 241.01, Stats., it would seem sec. 156.125 validates such arrangements on the grounds of public policy. Sec. 241.01 is a general statute voiding all gifts, transfers, and assignments in trust for the use of the person making them as against his creditors, while sec. 156.125 is a more-recent and specific statute dealing with part of the same general subject matter. The two statutes must be construed together and harmonized. Under the well-recognized standards of statutory construction, the more-recent specific statute controls and exists as an exception to the general statute. Some cases state the general statute cannot be construed to embrace the subject matter of the special statute. *Pruitt v. State* (1962), 16 Wis. (2d) 169, 114 N. W. (2d) 148; *Green County v. Monroe* (1958), 3 Wis. (2d) 196, 202, 87 N. W. (2d) 827; *Maier v. Racine County* (1957), 1 Wis. (2d) 384, 84 N. W. (2d) 76; *Estate of Kirsh* (1955), 269 Wis. 32, 68 N. W. (2d) 455, 69 N. W. (2d) 495; *Boyle v. Larzelere* (1944), 245 Wis. 152, 13 N. W. (2d) 528. While we differ with the trial court on the reasons assigned, we find no error in denying the motion for judgment on the pleadings.

The plaintiff argues the trial court committed error as a matter of law in granting judgment dismissing the complaint. Both parties agree the prepaid funeral arrangement constituted a trust under sec. 156.125, Stats. True, the certificates of deposit were not invested as directed by sec. 156.125 (2) and were held in the name of the defendant rather than invested in an account in the name of Kendall. Regardless of how the payments under the contract are invested, the section makes such payments trust funds and we impress the trust upon the certificates of deposit held by the defendant and apply the statute to the defendant as trustee. The statute

contemplates no passive trust as claimed by the plaintiff but an active one.

The trial court erroneously found "the property covered by this contract is the coffin and other articles for the burial" and was exempt under sec. 272.18 (20), Stats., 33 W.S.A., p. 532. This section applies to cemetery lots, tombstones, monuments, coffins, and other articles of burial. We point out that sec. 156.125 applies to cemeteries as well as to funeral directors. One might make a prepaid agreement with the cemetery for the delivery of specific personal property such as a tombstone, vault, perhaps a coffin, and to furnish services for a burial. Such personal property independently of sec. 156.125 would be exempt under sec. 272.18 (20). The testimony in this case showed no particular personal property such as a coffin or a monument or tombstone was agreed upon between Kendall and the defendant. The true nature of this agreement was the purchase of a complete funeral as a unit including the performance of the services of a funeral director and the furnishing of such personal property as was necessary for the burial of Kendall in Graceland cemetery. We hold sec. 272.18 (20) has no application to this contract. However, this section does evince a public policy to allow a person to prepare to some extent for his burial free from the claims of his creditors.

The plaintiff's recovery must depend upon the scope and the effective function of the garnishment process. To reach the certificates of deposit, Kendall's right to recover them from the funeral director must be absolute and not contingent at the time the garnishment process is served. Secs. 267.17 and 267.18 (4), Stats. *Vollmer v. Chicago & N. W. R. Co.* (1893), 86 Wis. 305, 56 N. W. 919; *Dowling v. Lancashire Ins. Co.* (1894), 89 Wis. 96, 61 N. W. 76; *Edwards v. Roepke* (1889), 74 Wis. 571, 43 N. W. 554; *Lehmann v. Farwell* (1897), 95 Wis. 185, 70 N. W. 170. The liability

of the defendant as garnishee under sec. 267.17 is for property in his possession or control belonging to Kendall or in which he is interested to the extent of his right or interest therein and for all the defendant's debts due or to become due to Kendall with exceptions not material here. Under sec. 267.18 the garnishee is not liable by reason of anything owing by him upon a contingency. See Anno. 134 A. L. R. 853, and 1950 Wisconsin Law Review, 553.

A garnishee is generally liable to the creditor to the same extent as he is liable to suit by the principal debtor in respect to property in his possession with several exceptions, one of which is a garnishee may be chargeable where no demand is made although the principal debtor could not maintain an action without proof of a prior demand. 4 Am. Jur., Attachment and Garnishment, p. 637, sec. 134. This exception to the rule is followed in *Steer v. Dow* (1908), 75 N. H. 95, 71 Atl. 217, and *Godfrey Coal Co. v. Gray* (1936), 296 Mass. 323, 5 N. E. (2d) 556. A contrary result was reached in *Morphet v. Morphet* (1958), 19 Ill. App. (2d) 304, 152 N. E. (2d) 492. In the *Morphet Case* the principal debtor had an option of making a written election to receive the present cash value of an annuity or to receive periodic payments. The option was not exercised at the time the insurance company was garnisheed. In *Vollmer v. Chicago & N. W. R. Co., supra,* the garnishee's obligation was held contingent because conditioned upon the exercise of an option by employees to be paid directly by the garnishee. In *Lehmann v. Farwell, supra,* the obligation to pay the amount due on a verdict was contingent because the judgment thereon had not been entered.

Under sec. 156.125, Stats., Kendall had a right to demand the release of the funds from the trustee after written notice to the funeral director. This in effect would be either terminating the trust or revoking it by the grantor. Since Kendall

is in fact the grantor and also the beneficiary of the trust, he has in effect an option to receive either the funeral upon his death or the return of the money in his lifetime. The precise question is whether the nonexercise of such option to receive the return of the money is a sufficient contingency to make the obligation immune from the garnishment process. From the trustee's standpoint he has no absolute duty to pay the funds to Kendall but only a duty owing upon a contingency. Likewise the duty to pay the funeral director is contingent. The trustee's relationship to Kendall is not that of debtor and creditor. We hold the liability to pay Kendall was upon a contingency. The garnishment process may neither ignore the contingency nor reach the power to resolve it.

This result must also be reached on the ground of the public policy expressed in sec. 156.125, Stats., which validates prepaid funeral arrangements and provides assurance of their performance so long as the person who made the payments desires it. Considering the public policy of sec. 272.18 (20) exempting graves, tombstones, and monuments from execution, and of sec. 156.125 assuring the performance of prepaid funeral services, we must conclude the public policy of this state is that a person may arrange for his decent burial and in effect prepay it, and thus secure for himself the peace of mind that he will not be buried at public expense even though this results in shifting its cost to his creditors. There seems to be less ignominy for a person to receive a decent burial of his own choosing as a debtor than to be buried in a potter's field owing no one. But perhaps all of us cannot be like Longfellow's Village Blacksmith,

> "And look the whole world in the face,
> "For he owes not any man."

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.

Currie, J. (*dissenting*). I respectfully dissent from the majority opinion for the reasons hereinafter set forth.

The majority leaves undecided whether personal property in the hands of the garnishee defendant, which he received as a result of a fraudulent transfer from the principal defendant, is subject to garnishment under our present garnishment statute by creditors of such defendant. Nevertheless, the overwhelming weight of authority is that such property is subject to garnishment under similarly worded garnishment statutes. 37 C. J. S., Fraudulent Conveyances, p. 1142, sec. 310. This court, as recently as 1955, in *Berger v. Berger* (1955), 271 Wis. 292, 73 N. W. (2d) 503, under our garnishment statutes as presently worded, held a purchaser of a stock of merchandise, which purchase was void under the Bulk Sales Act (secs. 241.18 to 241.21, Stats.), liable in garnishment to creditors of the seller. A sale in violation of the Bulk Sales Act is a fraudulent conveyance. Id., at page 295. This aspect of the case is material if sec. 241.01 is applicable to the deposit at issue in this garnishment action with which Kendall paid defendant for his own funeral.

I deem sec. 241.01, Stats., applicable to such deposit if, as the majority holds, a trust relationship was created by sec. 156.125. The majority avoids this result by finding a repugnancy between secs. 241.01 and 156.125, and then resolving the repugnancy by holding that the later specific statute, sec. 156.125, prevails over the earlier general statute, sec. 241.01. I am unable to perceive any repugnancy between these two statutes. It seems abundantly clear that sec. 156.125 was enacted to protect the rights of those who pay money to funeral directors for future funerals against contingencies such as a funeral director's going out of business, dying, or having his assets attached, garnished, or levied upon by his creditors. There is no indication in the statute itself, or in its legislative history, that the statute was intended to protect

the payor against his own creditors. Sec. 241.01 does not render trusts created by the trustor for his own use void as between the trustor and the trustee, but only as against the creditors of the trustor. As between the immediate parties to the trust, courts would afford the trustor protection by enforcing the trust against the trustee.

A further point, on which I disagree with the majority, is that Kendall's failure to demand repayment of the deposit by the defendant presents a contingency which renders the deposit immune from garnishment. This facet of the opinion is only material on the assumption that sec. 241.01, Stats., is inapplicable. The general rule is that where the principal defendant has it within his power to demand payment, his failure to do so is not such a contingency as to render the money in the hands of the garnishee-defendant immune from garnishment. *Godfrey Coal Co. v. Gray* (1936), 296 Mass. 323, 5 N. E. (2d) 556; *Atwood v. Dumas* (1889), 149 Mass. 167, 21 N. E. 236; and *Graf v. Wilson* (1912), 62 Or. 476, 125 Pac. 1005. If the garnishee-defendant has the election under the contract with the principal defendant to pay money or perform some act, no garnishable debt arises until such election has been made. This rule, however, should not be turned around and applied to a situation where the principal defendant has an absolute right to elect the payment of money.

Lastly, I disagree with the majority's holding that this court should hold these funeral deposits exempt from creditors' process. That is a policy matter for the legislature to decide. Sec. 272.18, Stats., is replete with legislative provisions for exemption from creditors' process. This court should not add to the numerous classes of exempt property where the legislature itself has not seen fit to do so. Where the legislature enacts the exemption, it frequently places a limit in terms of dollars on the amount of the particular type

of property which is exempt. The court is ill fitted to do this type of legislating. Under the majority decision as it stands, there is nothing to prevent an insolvent debtor from making a $5,000 funeral deposit which would be exempt from the reach of his creditors.

I would reverse with directions that this funeral deposit be held subject to garnishment by plaintiff.