CHARLES M. HILL, SR., Secretary Department of Local Affairs Development
You have asked me what is the scope of the cooperative planning authority granted to local municipalities under the authority of sec. 66.30, Stats. *Page 314 
Section 66.30 (2), Stats., provides that:
"Any municipality may contract with another municipality or municipalities or the state or any department or agency thereof for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by statute."
It is important to emphasize that, while sec. 66.30, Stats., authorizes cooperation between municipalities, any single municipality may contract under this section only to the extent that it alone could perform the function involved in the cooperative contract. Thus, the extent to which any group of municipalities may join together in a given enterprise under sec. 66.30 is limited to the powers possessed by the least of them.
The performance of any specific governmental function, whether by a single municipality acting in its individual capacity or by several municipalities acting jointly, requires some degree of planning. This type of planning might be referred to as project-oriented planning. Therefore, by implication, several municipalities cooperating under sec. 66.30, Stats., in the joint performance of a particular function would necessarily have authority under that section to plan cooperatively for the organization, implementation and administration of the particular project for which they had contracted.
Moreover, sec. 66.30 (3), Stats., provides specifically that:
"Any such contract may provide a plan for administration of the function or project, which may include, without limitation because of enumeration, provisions as to proration of the expenses invoked, deposit and disbursement of funds appropriated, submission and approval of budgets, creation of a commission, selection and removal of commissioners, formation and letting of contracts."
It is only reasonable to assume that the "administrative planning" authority provided for in this subsection is intended to include authority for whatever planning might be necessary for the organization and implementation of particular *Page 315 
projects contracted for as well as for the planning necessary for the administration of such projects once they have been established or put into operation.
However, it is my opinion that sec. 66.30, Stats., is not envisioned as providing authority for regional planning in the sense that such planning would include general comprehensive planning over an area which would include the territories of several municipalities.
My primary basis for this opinion is that sec. 66.945, Stats., enacted subsequent to sec. 66.30, Stats., and providing for the creation, organization, powers and duties of regional planning commissions, deals specifically with general multi-jurisdictional planning "for the physical, social and economic development of the region." It is a well established standard of statutory construction that a more recent and specific statute controls and exists as an exception to a general statute. Grant County Service Bureau, Inc. v. Treweek (1963),19 Wis.2d 548, 120 N.W.2d 634. Therefore, absent a contrary expression of legislative intent, the more recent and specific language of sec. 66.945 would supersede the general language of sec. 66.30 with respect to the joint exercise of general planning authority by cities, villages, towns and counties.
There does not appear to be any language in either sec. 66.30 or sec. 66.945, Stats., which conflicts directly with this conclusion. To the contrary, the enactment of ch. 596, Laws of 1959, which revised extensively sec. 66.945, seems to support this conclusion. The notes accompanying the enactment of ch. 596, Laws of 1959, read in part:
"The purpose of this bill is to revise the regional planning law in an attempt to encourage the creation of regional planning commissions in the state . . .
"The present law was examined critically by the urban problems committee with the end view of making changes in the law which would make it more acceptable to local units and which would promote the creation of such regions . . . . *Page 316 
". . . The withdrawal provision is substantially revised to assure that a stable planning area can be maintained by the commission."
The organization, powers and duties of regional planning commissions established under sec. 66.945, Stats., are defined specifically by the provisions of that section. It would therefore be contrary to the above policy of encouraging the establishment of regional planning commissions to conclude that the limiting provisions of sec. 66.945 can be avoided by establishing multi-jurisdictional planning cooperatives under sec. 66.30.
Also, the revised withdrawal provision of sec. 66.945, Stats., has the effect of making it more difficult for participating municipalities to withdraw from a regional planning commission 90 days after the establishment of that commission. Any conclusion that the withdrawal provisions of sec. 66.945 can be avoided by establishing multi-jurisdictional planning cooperatives under sec. 66.30, Stats., would be contrary to the above policy of establishing stable planning regions.
An additional reason for concluding that sec. 66.30, Stats., is not envisioned as authority for the cooperative performance of general comprehensive planning functions by cities, villages, towns and counties is found in 47 OAG 52, at page 52, where it is pointed out that:
"Sec. 66.30 was not designed solely, or probably even primarily, as a regional planning statute. It provides that political subdivisions of the state may enter into agreements for `cooperative exercise' of any of their powers or duties.
"It appears from questions submitted to this office, dealt with in such opinions as 40 O.A.G. 9, 41 O.A.G. 335, and 44 O.A.G. 8, that resort has ordinarily been had to sec. 66.30 to carry out specific projects. I see no reason why it could not furnish authority for a contract for co-operative planning, providing the participating units could reach agreement on the scope and details of a program, and providing that the matters to be planned were within the scope of the respective powers of the participating units." *Page 317 
My predecessor in office then went on to conclude, at p. 54, that:
"The conditions imposed by the respective statutes seem to point to an intent that sec. 66.945 would be used when the activities are limited to general planning, affecting a substantial number of political subdivisions with varying interests: and that sec. 66.30 would be utilized to plan and carry out specific projects in which a small number of municipalities have a common interest."
There does not appear to be any conflict between the inclusion of regional planning commissions under sec. 66.30 (1), Stats., and the limited grant of cooperative planning authority to cities, villages, towns and counties under sec. 66.30 (2), Stats., that is suggested by this opinion. Regional planning commissions were added to the list of local municipalities included under sec. 66.30 (1) by ch. 192, Laws of 1959. That Act also included a revision of sec. 66.30 (2) whereby local municipalities listed under sec. 66.30 (1) were allowed to contract "for the receipt or furnishing of services." Viewed as a service under sec. 66.30 (2) general, comprehensive planning assistance might properly be the object of a contract between an individual city, village, town or county, on the one hand, and regional planning commission on the other hand, since regional planning commissions are particularly equipped to provide such services. However, the planning service itself being the object of the contract, the city, village, town or county participating in such a venture could not be said to be bound to implement the resultant plan.
Therefore, the inclusion of regional planning commissions under sec. 66.30 (1), Stats., appears only to be an affirmation of a concurrent change in sec. 66.945, Stats., by the enactment of ch. 596, § 5, Laws of 1959, which provided that:
"(12) (b) In addition to the other powers specified in this section a regional planning commission may enter into a contract with any local unit within the region under s. 66.30 to make studies and offer advice on:
1. Land use, thoroughfares, community facilities, and public improvements; *Page 318 
2. Encouragement of economic and other developments."
Another possible utilization of the contracting power authorized under sec. 66.30, Stats., with respect to regional planning commissions, would occur when several municipalities cooperating in a joint project might contract with a regional planning commission to provide assistance in establishing a plan for administering the particular project for which they had contracted under sec. 66.30. Depending upon the provisions of the contract between them, all of the contracting municipalities might, in this situation, be bound by the resultant plan.
Also, the inclusion of regional planning commissions under sec. 66.30 (1), Stats., can be interpreted as providing a mechanism for the joint exercise of general planning authority by two or more regional planning commissions. Although, as this opinion points out, sec. 66.945, Stats., was intended to supersede sec. 66.30 with respect to the joint exercise of general planning authority by cities, villages, towns and counties, the same is not necessarily true with respect to the general planning authority of regional planning commissions. Cities, villages, counties and towns are, on the one hand, provided with a specific vehicle for the joint exercise of their general planning authority under sec. 66.945. Regional planning commissions are, on the other hand, the creatures of sec. 66.945. Nothing in the latter section limits the ability of regional planning commissions to cooperate with one another under sec. 66.30; nor is there any other section which provides more specifically than sec. 66.30 for such authority.
Furthermore, there does not appear to be any conflict between the interpretation of sec. 66.30, Stats., suggested in this opinion and the provisions of sec. 22.14 (2) (c), Stats., which section is part of the basic legislation for the Department of Local Affairs and Development. Section 22.14 (2) (c) provides that:
"(2) The department shall:
"(c) Provide planning assistance to public planning agencies including, without limitation because of enumeration, *Page 319 
cities, villages, towns, counties, regional planning agencies and councils of government, including such entities, when operating or cooperating under s. 66.30, which have the resources and administrative personnel to carry out such planning."
It is doubtful that the reference to "cities, villages, towns, counties, regional planning commissions and councils of government" as "public planning agencies" in sec. 22.14 (2) (c), Stats., was meant to define or expand the planning authority granted to these agencies in other sections of the statutes. It is an established rule of statutory construction that a legislative definition of a word as used in a statute is not conclusive of the meaning of that word as used in other statutes. 50 Am. Jur., Statutes, sec. 265, p. 256.
Certainly cities, villages, towns and counties are not primarily "public planning agencies." They do, however, have some planning authority as appropriately defined in other sections of the statutes. Likewise, the reference to "such entities when operating or cooperating under s. 66.30" should not be interpreted as meaning that the primary function of any such cooperative is envisioned as general planning. Rather, reference should be had to other sections of the statutes for a definition of the planning authority appropriate to "such entities when operating or cooperating under s. 66.30."
Therefore, the inclusion of "such entities when operating or cooperating under s. 66.30" in sec. 22.14 (2) (c), Stats., merely suggests that two levels of planning assistance are envisioned under that section. A broad scope of planning assistance would, on the one hand, be appropriate to municipalities exercising their general planning authority in their individual capacities and to regional planning commissions exercising their general, multi-jurisdictional planning authority under sec. 66.945, Stats. A narrower scope of planning assistance would, on the other hand, be appropriate to cities, villages, counties and towns in the joint exercise of their specific project planning authority under sec. 66.30, Stats.
Finally, even if cooperative planning of a general nature could be envisioned under sec. 66.30, Stats., it is doubtful that implementation of any resultant plan would be obligatory *Page 320 
upon the participating municipalities. The contractual nature of the cooperative authority granted under sec. 66.30 suggests that, in order to be binding upon the participants, the details of the contemplated project would have to be spelled out in the original contract. While the details as to how the planning function would be administered might be included in the original contract, it is axiomatic that the content of the resultant plan could not be so included. The obvious conclusion is therefore that any plan resulting from such a cooperative effort would only be advisory to the participating entities.
In summary, it is my opinion that the only cooperative planning activity envisioned under sec. 66.30, Stats., would be that planning which is collateral to the organization, implementation and administration of specific projects contracted for under the authority of that section. The grant of general regional or multi-jurisdictional planning authority appropriately falls within the scope of sec. 66.945, Stats.
If you desire that municipalities be allowed to join together under a contractual arrangement similar to that provided for in sec. 66.30, Stats., for the purpose of performing general planning functions, it is my opinion that specific legislative authorization must be obtained for that purpose.
RWW:BS