DAVID L. RUSCH, Chairman Funeral Directors Embalmers ExaminingBoard
You have requested my opinion as to whether a plan for sale of movable concrete burial vaults to consumers for future use, as hereafter described, would be contrary to the provisions of secs.445.12(6) and 445.125(1), Stats.
You state that a Wisconsin manufacturer:
 [P]roposes to sell its product with the aid of licensed funeral directors. The funeral director would inform the consumer of the availability for purchase of the manufacturer's burial vaults at the time a consumer contacted the funeral director for future funeral arrangements. The funeral director would discuss with the consumer the various vaults available from the manufacturer. If the consumer decided upon the purchase of a burial vault, the consumer would execute the Certificate of Sale and the funeral director would then forward the contract to the manufacturer for its signature, along with the consumer's payment. The funeral director would not be a party to the contract. The purchase of a burial vault would not be a part of any [separate] prearranged funeral plan which might be entered into between the funeral director and the consumer. The funeral director would receive a fee for this service from the vault manufacturer, at the time of need for the vault. *Page 142 
The contract or certificate of sale of burial receptacle states that:
 ___________________________ is the Owner with full right, title, and interest to a burial receptacle manufactured by Seller and known as __________________________________, for use at Owner's agent's request.
 Seller does hereby further acknowledge receipt of the sum of ____________________ as and for payment of above mentioned burial receptacle.
 This certificate is subject to the following terms and conditions:
 1. Owner may rescind this purchase by giving written notice of intent to rescind to Seller within one week of date hereof. Upon failure to give said notice, this certificate shall be binding on all parties.
 2. Owner understands and agrees that burial receptacle placement shall be subject to any cemetery charges, permit fees, transportation charges, etc., which shall be paid by Owner at time of placement. Delivery is f.o.b. (freight on board) Seller's plant subject to Seller's normal transportation charge at time of placement to designation of Owner's choice.
 3. Owner shall be entitled to all normal warranties that are offered with the burial receptacle.
 4. Owner agrees, upon resale of receptacle, to notify Seller of the name and address of the new Owner and to pay a $15.00 transfer fee.
 5. Owner's act of making payment shall constitute acceptance of all the terms and conditions hereunder. All sale proceeds are to be deposited in a federally insured account or government securities under title of Lake Shore Burial Vault Pre-Need account until actual performance of services by Seller. *Page 143 
 6. Owner or Owner's agent has a right at any time prior to placement to get full credit for a receptacle covered hereunder on a higher priced burial receptacle of this Seller; however, no refund will be made except under #7.
 7. In the event of Owner's death and burial outside Seller's service area, Owner's estate or agent shall have a right to a return of One Hundred (100%) percent of purchase price plus accrued interest at a rate of Six (6%) percent per year provided a copy of the death certificate is delivered to Seller.
 8. All convenants and conditions herein contained shall extend to and be binding upon the heirs, legal representative and successors and assigns of the Owner and Seller herein.
 9. Seller reserves right to provide a substitute burial receptacle of similar quality, standard and price available at the time of placement.
 10. Seller shall not be held liable for failure to perform by war, strike, or act of God rendering service impossible.
 11. The Seller reserves the right to decide any conditions or situations which may occur, which are not expressly covered herein.
In my opinion, a funeral director who participates in the plan would not be in violation of sec. 445.12(6). Stats., which provides:
 No licensed funeral director, licensed embalmer, or operator of a funeral establishment shall operate a mortuary or funeral establishment located within the confines of, or connected with, any cemetery. No licensed funeral director or licensed embalmer or his or her employe shall, directly or indirectly, receive or accept any commission, fee, remuneration or benefit of any kind from any cemetery, mausoleum or crematory or from any proprietor or agent thereof in connection with the sale or transfer of any cemetery lot, entombment vault, burial *Page 144 
privilege or cremation, nor act, directly or indirectly, as a broker or jobber of any cemetery property or interest therein.
The stated facts do not indicate any connection between the vault manufacturer or funeral director and any cemetery, mausoleum or crematory, nor do the facts show that the funeral director is acting as a broker or jobber of any cemetery property or right to burial therein.
It is my opinion, however, that the plan would violate sec.445.125(1), Stats., and participation therein by the vault manufacturer and funeral director would subject such persons to fines or imprisonment under sec. 445.15(1), Stats. Section445.125(1), (2), Stats., as amended by ch. 64 Laws of 1981, provides in part:
 (1)(a) Whenever any person, referred to in this section as the depositor, makes an agreement with a funeral director, cemetery organization or any other person referred to in this section as the beneficiary, for the final disposition of the body of a person referred to in this section as the potential decedent, wherein the use of personal property under a prearranged funeral plan or the furnishing of services of a funeral director or embalmer in connection therewith is not immediately required, all payments made under the agreement shall he and remain trust funds, including interest and dividends if any, until occurrence of the death of the potential decedent, unless the funds are sooner released upon demand to the depositor, after written notice to the beneficiary.
 (b) Notwithstanding § 701.12 (1), such agreements may be made irrevocable as to the first $1,500 of the funds paid under the agreement by each depositor.
 (c) Any interest or dividends accruing to a trust fund under par. (b) may be made irrevocable.
 (d) Any depositor who made an irrevocable agreement under par. (b) may designate a different beneficiary at any time prior to death, after written notice to the current beneficiary.
 (e) Nothing in this section shall prevent the sale and delivery of cemetery lots, graves, crypts, niches, columbaria or grave or lot markers or monuments before their use is required. *Page 145 
 (2) All such trust funds shall be deposited with a bank or trust company . . . savings and loan association . . . credit union within the state . . . and shall be held in a separate account in
the name of the depositor, in trust for the beneficiary until the trust fund is released under either of the conditions provided in sub. (1). In the event of the death of the depositor before the death of the potential decedent, title to such funds shall vest in the potential decedent, and the funds shall be used for the personal property and services to be furnished under the contract for the funeral of the potential decedent. The depositor shall be furnished with a copy of the receipts, certificates or other appropriate documentary evidence showing that the funds have been deposited or invested in accordance with this section. The depositor or the beneficiary shall furnish the bank, trust company, savings and loan association or credit union with a copy of the contract. Upon receipt of a certified copy of the certificate of death of the potential decedent, together with the written statement of the beneficiary that the agreement was complied with, the bank, trust company, savings and loan association or credit union shall release such trust funds to the beneficiary.
While the statute excepts sale and delivery of personalty in the nature of "grave or lot markers or monuments before their use is required," it makes no reference to caskets and movable concrete burial vaults. In my opinion, a person can purchase and take delivery of a casket or concrete burial vault, without the necessity of establishment of a trust fund, where the property and services connected therewith are not part of a prearranged funeral plan. The simple sale and contemporary delivery to the buyer of a casket or vault does not, by itself, constitute an agreement for final disposition of a body. However, where there is a prearranged funeral plan for the final disposition of the body of a decedent, involving the future delivery and use of personal property such as a casket or movable burial vault, as here, the statute requires that payments made "shall be and remain trust funds including the interest thereon until the death of the person whose funeral is so provided for or the funds are sooner released upon the demand of the person making the payments *Page 146 
. . . ." Grant County Service Bureau v. Treweek,19 Wis.2d 548, 551, 120 N.W.2d 634, 637 (1963). The court continued:
 Regardless of the somewhat misleading and confusing language of the statute, it is apparent the intent of the legislature was to secure the performance of the funeral services and burial contracted for by creating a trust of the payments made. Funeral directors before performing the contract might go out of business, die or be unable to perform the contract for other reasons. The enactment of the legislature recognizes the validity of prearranged and prepaid funerals and the public interest in securing the performance of such arrangements.
Under the stated facts, the concrete vault is intended for burial use by a named owner as potential decedent. The vault is not to be delivered presently, but is intended for delivery to "designation" [destination] at owner's or owners' agent's request for placement in a cemetery. The seller retains a right to substitute a different burial receptacle at the time of placement. The contract provides that all sale proceeds shall be deposited in a federally insured account or government securities "under title of Lake Shore Burial Pre-Need Account." Such account is not a "separate account," nor is it "in the name of the depositor" as required by sec. 445.125(2), Stats. Under the stated facts, and sec. 445.125(1), Stats., the seller and funeral director would be beneficiaries rather than the depositor. The transaction constitutes an agreement for the use of personal property, the burial vault, under a prearranged funeral plan. The statute is applicable to prearranged funeral plans which may not cover every aspect of final disposition. Here the plan fails to provide for a trust fund as required by statute. You do not advise as to the dollar amounts involved in such contracts and I therefore decline to discuss aspects of revocability and right to refund.
BCL:RJV *Page 147